# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDI MOUHAMED DEIDE, ADAMA SY, ABDALLAHI SALEM, and MOUHAMED SAID MALOUM DIN,<br><br>Plaintiffs,<br><br>v.<br><br>EDWIN J. DAY as Rockland County Executive; STEVEN M. NEUHAUS as Orange County Executive,<br><br>Defendants. | Case No. 23-cv-3954<br><br>**COMPLAINT** |

## INTRODUCTION

1.     This civil-rights action challenges aggressive and plainly unlawful efforts by Rockland and Orange Counties in New York to block migrants from traveling to and residing within their borders. Having welcomed tens of thousands of migrants over the last year, New York City recently made arrangements to house a small number of migrants in Rockland County and nearby Orange County. In response, the two counties immediately issued executive orders that expressly seek to bar "migrants" and "asylum seekers" from coming to the counties from New York City and that further seek to bar local hotels from making their rooms available to migrants for any period of time. In conjunction with these orders, Rockland County Executive Edwin Day and Orange County Executive Steven Neuhaus have made racist and incendiary accusations about immigrants and have threatened to deploy local law enforcement to physically block buses bring migrants to their counties.

2.     Attempting to justify these draconian measures, the defendants have invoked an emergency that does not exist, raising the specter of "thousands" of immigrants entering the Counties and burdening social services. But there are no large-scale plans for migrants to move

to these counties nor any immediate need for the counties to absorb the costs of caring for the limited migrants who do choose to do so. And the appropriate response would be to address the need, not to enact discriminatory and exclusionary policies.

3.     The plaintiffs are four migrants who are, or until today were, sheltered in New York City. Each plaintiff volunteered to participate in the City's program and all the plaintiffs wish to relocate to Rockland or Orange Counties. They were scheduled to travel to a hotel in one of the counties on May 10 but were unable to do so because of the defendants' actions. On May 11, at least two of the plaintiffs traveled by bus to the Crossroads Hotel in Newburgh and were permitted to enter. At the time of the filing of this complaint, at least one plaintiff remains in New York City, after earlier attempts to travel to Rockland County or Orange Counties failed.

4.     The defendants' actions violate the Due Process Clause and Equal Protection Clause of the United States Constitution, Title II of the Civil Rights Act of 1964, and Section 24 of the New York Executive Law. The plaintiffs seek declaratory and injunctive relief requiring the defendant to comply with these constitutional and statutory mandates and barring them from seeking to bar or impede migrants from residing in Orange County.

### PARTIES

5.     Plaintiff SIDI MOUHAMED DEIDE is a migrant who recently arrived in the United States. He is, or until the morning this complaint was filed, was residing in a makeshift shelter located in Brooklyn, New York, but hopes to relocate outside of New York City. He has opted into the program described in this complaint.

6.     Plaintiff ADAMA SY is a migrant who recently arrived in the United States. He is, or until the morning this complaint was filed, was in a makeshift shelter located in Brooklyn, New York, but hopes to relocate outside of New York City. He has opted into the program described in this complaint.

2

7.      Plaintiff ABDALLAHI SALEM is a migrant who recently arrived in the United States. He is, or until the morning this complaint was filed, was in a makeshift shelter located in Brooklyn, New York, but hopes to relocate outside of New York City. He has opted into the program described in this complaint.

8.      Plaintiff MOUHAMED SAID MALOUM DIN is a migrant who recently arrived in the United States. He is, or until the morning this complaint was filed, was in a makeshift shelter located in Brooklyn, New York, but hopes to relocate outside of New York City. He has opted into the program described in this complaint.

9.      Defendant EDWIN J. DAY is the Executive of Rockland County. He is a chief executive within the meaning of section 24 of the New York Executive Law and is sued in his official capacity.

10.     Defendant STEVEN M. NEUHAUS is the Executive of Orange County. He is a chief executive within the meaning of section 24 of the New York Executive Law and is sued in his official capacity.

## FACTS

### *New York City Welcomes Large Numbers of Migrants*

11.     Within the past year, over 60,800 migrants have arrived in New York City. New York City recognized the need to supplement the city's shelter system to handle the arrivals of migrants and city agencies began to establish and operate temporary "Human Emergency Relief and Response Centers" to fit this need. Over the past several months, New York City has provided temporary housing, food, medical care, and case work and other social services for over 36,738 of these migrants.

12.     As of May 11, 2023, the policy along the southern border will change and New York City officials expect as many as 1,000 people a day to begin arriving in New York.

13.     New York City has stated that the city's shelter system is operating beyond its capacity.

***The Plaintiffs Opt into a Voluntary Relocation Program Funded by New York City***

14.     On or around Friday, May 5, 2023, New York City Mayor Eric Adams announced a "new, voluntary program," open to the plaintiffs and other migrants located in makeshift shelters around New York City. Under the program, described by Mayor Adams as a way for participants to establish "connections to local communities as they build a stable life in New York State," New York City would offer transportation to Orange and Rockland Counties, where program participants would continue to receive temporary lodging, meals, and social services funded by New York City.

15.     To effectuate this program, New York City entered into contracts with two hotels: the Crossroads Hotel, located in Newburgh in Orange County, and the Armoni Inn and Suites, located in Orangeburg in Rockland County.

16.     The plaintiffs each opted into the program, adding their name to a list, maintained by New York City officials, of individuals who wished to participate, and to relocate from New York City.

17.     Since recently arriving in New York, the plaintiffs have each been living in a makeshift shelter for migrants in Brooklyn. They have each expressed a desire to relocate to Rockland and Orange Counties and begin to build their new lives in the United States.

***Orange and Rockland Counties Act to Block the Program***

18.     In response to Mayor Adams's announcement, government officials in Orange and Rockland Counties took immediate and extraordinary steps to block the program.

19.     On Saturday, May 6, 2023, Defendant Ed Day declared a state of emergency "arising from New York City's program to rapidly increase the number of migrants . . . to unsustainable levels." Rockland County Executive Order, appended as Exhibit 1 ("Rockland County EO").

20.     The emergency declaration states Rockland County "is not capable of receiving and sustaining the volume of migrants and asylum seekers that New York City intends to send over, whose presence will spike the number of people in need of government services at all levels of government in the County from Villages to Towns and School Districts...".

21.     In an accompanying press release, Defendant Day claimed: "This State of Emergency prohibits other municipalities from bringing and housing people in the County and prohibits hotels and motels from housing immigrants without a license and requires any municipalities that might bring migrating or asylum-seeking people into Rockland County to ensure they will be fully cared for and paid for."

22.     Pursuant to this claimed state of emergency, Defendant Day promulgated an executive order prohibiting "foreign municipal programs that burden the County." The order states in relevant part that "no municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive." The order further prohibits any "hotel, motel, or owner of a multiple dwelling in Rockland County" from "contract[ing] or otherwise engage in business with any other municipality other than the County of Rockland for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County."

23.     In discussing the Rockland County EO, Executive Day speculated that the migrants intending to relocate to the county may be "child rapists"; "criminals"; or gang members. "Whatever we need to do to stop this, we will do," he stated to one media outlet.

24.     Defendant Day later conceded that the initial group of migrants who planned to relocate to the hotels outside New York City were not necessarily "problematic."

25.     Two days later, on Monday, May 8, 2023, Defendant Neuhaus issued an executive order declaring a state of emergency in Orange County "in response to New York City's proposed plan to send asylum seekers to be temporarily housed at motels in the Town of Newburgh." Orange County Executive Order, appended as Exhibit 2 ("Orange County EO").

26.     As justification for the claimed emergency, the declaration provides "there is reasonable apprehension of immediate danger of public emergency of potentially thousands of persons being transported to Orange County" and that Orange County "is not capable of receiving and sustaining such volume of migrants and asylum seekers."

27.     While predicting that Orange County's restrictions on housing "will result in large-scale homelessness for these migrants and asylum seekers," the executive order prohibits "all hotels, motels and/or any facilities allowing short-term rentals" from "accept[ing] said migrants and/or asylum seekers for housing within Orange County."

28.     In repeated public addresses the following day, Defendant Neuhaus expounded on the executive order. In one such address, he stated, "I am opposed to these asylum seekers being sent to our communities." In another, he asked, "Who are these people? What's their background?"

29.     Two days after issuing the executive order, Defendant Neuhaus threatened to intercept migrants attempting to locate to Orange County, warning: "I think we're going to have a standoff in the next 24 to 48 hours."

30.     Since the issuance of the EO, Defendant Neuhaus has declined to rule out fining hotels that violate the EO, evicting migrants housed in those hotels, and directing county law enforcement to force buses transporting migrants into Orange County to leave.

***Governor Hochul Declares a State of Emergency***

31.     On May 9, 2023, New York Governor Hochul declared a state of emergency due to "the arrival of increased numbers of migrants seeking shelter" in New York City and State. Governor Hochul's directive authorizes agencies and the Red Cross "to assist affected local governments and individuals in responding to and recovering from this disaster, and to provide such other assistance as necessary to protect the public health and safety." The order also suspends certain state laws governing contracts, purchasing rules, and real property which will allow the state to buy goods and lease buildings, and enable additional spaces to be used to shelter migrants throughout the state.

## JURISDICTION AND VENUE

31.     This action is brought under the U.S. Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 2000a. The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

32.     This Court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure and to issue injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

33.     Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## CLAIMS FOR RELIEF

### First Claim
### Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution

34.     The defendants' conduct as alleged herein violates the Due Process Clause of the

Fourteenth Amendment to the United States Constitution.

### Second Claim
### Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

35.     The defendants' conduct as alleged herein violates the Equal Protection Clause of

the Fourteenth Amendment to the United States Constitution.

### Third Claim
### Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C § 2000a *et seq.*

36.     The defendants' conduct as alleged herein violates Title II, Section 201 of the

Civil Rights Act of 1964.

### Fourth Claim
### Violation of N.Y. Executive Law § 24

37.     The defendants' conduct as alleged herein violates section 24 of the New York

Executive Law.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiffs hereby requests that the Court:

a.  Declare that the defendants' conduct violates the plaintiffs' rights under the Due

Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S.

Constitution, Title II of the Civil Rights Act of 1964, and Section 24 of the New

York Executive Law;

b.  Enjoin the defendants from interfering with the plaintiffs' travel to and within

Rockland and Orange Counties;

    c.   Enjoin the defendants from interfering with the plaintiffs' housing or other means of shelter within Rockland and Orange Counties;

    d.   Award the plaintiffs reasonable attorney's fees and costs; and

    e.   Grant such other and further relief as the Court deems just and equitable.

Dated: May 11, 2023
       New York, New York

                         Respectfully submitted,

                         NEW YORK CIVIL LIBERTIES UNION
                           FOUNDATION

                         */s/ Amy Belsher*

                         Amy Belsher
                         Antony Gemmell
                         Guadalupe Victoria Aguirre
                         Ifeyinwa Chikezie*
                         125 Broad Street, 19th Floor
                         New York, N.Y. 10004
                         212-607-3300
                         abelsher@nyclu.org
                         agemmell@nyclu.org
                         laguirre@nyclu.org
                         ichikezie@nyclu.org

                         *Counsel for the Plaintiffs*

* Application for admission in the Southern District of New York forthcoming

# EXHIBIT 1



## Rockland County
**Ed Day, Rockland County Executive**

**OFFICE OF THE COUNTY EXECUTIVE**
11 New Hempstead Road
New City, New York 10956
Phone: (845) 638-5122   Fax: (845) 638-5856
Email: CountyExec@co.rockland.ny.us

**Edwin J. Day**
*Rockland County Executive*

### COUNTY OF ROCKLAND

### EDWIN J. DAY,
### COUNTY EXECUTIVE

### DECLARATION OF A LOCAL STATE OF EMERGENCY
### FOR ROCKLAND COUNTY
### (Sustainable Migration)

I hereby declare, pursuant to NYS Executive Law § 24, a State of Emergency to exist in Rockland County.

WHEREAS, there is nothing humanitarian about a sanctuary city sending busloads of people to a County that does not have the infrastructure to care for them, especially since social services funding is not applicable to undocumented individuals; and

WHEREAS, over the past several months, thousands of asylum seekers have been arriving in New York City, from the Southern border, without having any immediate plans for shelter; and

WHEREAS, on December 16, 2016 the City of New York declared itself to be a "sanctuary city", with the City Council finding that "The City will not abandon immigrant New Yorkers and we will support and defend their rights; and that "The City's commitment to the rule of law and the protection of immigrant New Yorkers is deep and strong"; and

WHEREAS, the City of New York City Council's sentiments have now failed in the face of the reality of the Federal mismanagement of immigration at the border; and

WHEREAS, as recently as May 5, 2023, as a result of Federal policies and the sanctuary city policies of the government of the City of New York, the Mayor the City of New York conceded that "the City now faces an unprecedented humanitarian crisis that requires it to take extraordinary measures to meet the immediate needs of the asylum seekers while continuing to serve the tens of thousands of people who are currently using the NYS DHS Shelter System;" and

WHEREAS, New York City's state of emergency is the result of being overwhelmed by the number of migrants and asylum seekers accepting the offer of sanctuary extended by New York City; and

WHEREAS, NYC has threatened to alleviate the problem it has created for itself by support for sanctuary city policies and the open border immigration policies of the Federal government by shipping its problems to the neighboring, County of Rockland; and

WHEREAS, the County, which is less than one tenth the population of New York City, is not capable of receiving and sustaining the volume of migrants and asylum seekers that New York City intends to send over, whose presence will spike the number of people in need of government services at all levels of government in the County from Villages to Towns and School Districts, and other services that require expenditure of local tax dollars with no aid from the Federal Government or the sanctuary city that instigate this issue; and

WHEREAS, there is no reason to believe that these migrants or asylum seekers will leave the County after New York City ceases to pay for the housing and any services they are presently receiving New York City or that this will be the last time this kind of spike will occur; and

WHEREAS, Rockland County is already a cosmopolitan, diverse County, with people of many backgrounds and identities, that freely helps all in need with programs for both documented and undocumented migrants; and

WHEREAS, already the County is struggling with the natural and organic migration of people into the County, including low income housing shortages and school districts rapidly gaining population, stressing services without the unneeded, unnecessary, and unnatural spike in population New York City's program will cause by the mass transportation of asylum seeking persons to Rockland County; and

WHEREAS, the County and its various municipalities must be reimbursed by the City for any expenses incurred as a result of New York City's program to move asylum seekers to Rockland County; now it is declared that

A State of Emergency continues exists in Rockland County, and
This local State of Emergency shall be effective as of May 6, 2023 and remain in effect for thirty days, and may be extended at that time.

Dated:  May 6, 2023

_____
Edwin J. Day
County Executive
County of Rockland

_____
Michael K. Hoblin
Deputy County Executive
County of Rockland



### Rockland County
**Ed Day, Rockland County Executive**

**OFFICE OF THE COUNTY EXECUTIVE**
11 New Hempstead Road
New City, New York 10956
Phone: (845) 638-5122   Fax: (845) 638-5856
Email: CountyExec@co.rockland.ny.us

**Edwin J. Day**
*Rockland County Executive*

## COUNTY OF ROCKLAND

**Edwin J. Day,**
**County Executive**

## LOCAL STATE OF EMERGENCY
## EMERGENCY ORDER NO. 1
### (Sustainable Migration)

On May 6. 2023, a State of Emergency was declared for the County of Rockland arising from New York City's program to rapidly increase the number of migrants in this County to unsustainable levels.

Pursuant to NYS Executive Law § 24, when a State of Emergency is in effect, the County Executive may promulgate local emergency orders to protect life and property or to bring the emergency situation under control.  By law upon reconsideration of all the relevant facts and circumstances, such an order may be extended for additional periods not to exceed five days each during the pendency of the state of emergency.

If it were allowed for the City of New York or other municipalities to simply flood the County with persons in need of services, as described in the related Declaration, this crisis would only worsen.

Therefore, by the power vested in me as Chief Executive of Rockland County, it is hereby ordered:

*Section 1. Prohibition of foreign municipal programs that burden the County.*
    A. No municipality may make contracts with persons, businesses, or entities doing business within the County to transport migrants or asylum seekers to

locations in the County, or to house persons at locations in the County for any length of time without the express written permission of the County Executive. In addition, no person or entity may act on behalf of any municipality or in performance of a municipal program, or other act funded by a municipality, to perform an act in violation of this subsection.

B.  No hotel, motel, or owner of a multiple dwelling in Rockland County is permitted to contract or otherwise engage in business with any other municipality other than the County of Rockland (an "external municipality") for the purpose of providing housing or accommodations for migrants or asylum seekers without a license granted by the County.  This prohibition extends to any person or entity participating in an external municipality's government program, or a contract or service funded by an external municipality, or acting on behalf of any external municipality.

1.  Licenses will be granted only by the Rockland County Office of the County Executive's Director of Public Policy and Intergovernmental Relations (the Director).  The Director may enlist the services of any other agency within the executive branch of the County government to perform the duties necessary to effect this provision.

2.  Licenses will only be granted where, to the satisfaction of the Director, both the applicant and the foreign municipality demonstrate that:

    a.  The contract provides that the migrants or asylum seekers will be returned to the foreign municipality from which they arrived or another location outside the County, within fifteen days;

    b.  The foreign municipality demonstrates to the County that it has sufficient funding to sustain the needs of the migrants or asylum seekers during the time of their stay; and

    c.  The foreign municipality agrees to assume any costs expended by any municipality in the County ("domestic municipalities") including the County itself, for the care, welfare, law enforcement interactions, or other expenses related to municipal interaction with the migrants or asylum seekers upon demand,

    d.  The applicant and the foreign municipality each have a performance bond for the conditions set by the license in the

amount of $2,000 per migrant or asylum seeker being housed or boarded at the applicant's facility.

3. The conditions described in this section will not apply to any contract directly between the foreign municipality and the County.

4. License renewal will be at the sole discretion of the Director, after consideration of the purpose and intent of the State of Emergency that instigated this Emergency Order.

C. Remedies.

1. Appearance tickets. The Sheriff, the Director and the Director's designees are authorized to issue appearance tickets for any violation of this Emergency Order for the penalty prescribed by NYS Executive Law § 24(5).

2. Civil penalties. In addition to those penalties prescribed by NYS Executive Law § 24(5), any person who violates any provision of this Emergency Order or any term or condition of any license issued pursuant to this Emergency Order, shall be liable to a civil penalty, to be determined by a process set by the Director, of not more than $2,000 per migrant/asylum seeker housed by the foreign municipality or other violator, for each day or part thereof during which such violation continues.  The civil penalties provided by this subdivision shall be recoverable in an action instituted in the name of this County and initiated by the Director.

3. Abatement. Regardless of any other remedy or relief brought by the County for any violation, the Director is authorized to direct the County Attorney to commence actions or proceedings in the name of the County, in a court of competent jurisdiction, to abate any violation of, or to enforce any provision of this Emergency Order.

D. Remedies not exclusive.

1. No remedy or penalty specified in this Emergency Order shall be the exclusive remedy or remedy available to address any violation described in this Emergency Order.

**Page 4**

2. Each remedy or penalty specified in this Emergency Order shall be in addition to, and not in substitution for or limitation of, the other remedies or penalties specified in this Emergency Order or in any other applicable law.

3. Any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any other remedy or penalty specified in this Emergency Order or in any other applicable law.

4. In particular, but not by way of limitation, each remedy and penalty specified in this section shall be in addition to, and not in substitution for or limitation of, the penalties specified in NYS Executive Law § 24, and any remedy or penalty specified in this section may be pursued at any time, whether prior to, simultaneously with, or after the pursuit of any penalty specified in NYS Executive Law § 24.

E. Notifications.   In addition to such other powers or duties the Sheriff of Rockland County may consider in the exercise of the Sheriff's duties with respect to this Emergency Order, the Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County in violation of the restrictions and regulations of this Emergency Order, and to similarly, notify the owners and operators of facilities suspected of housing any migrants or asylum seekers, or seeking or entering agreements with external municipalities, without the license required by this Emergency Order.

*Section 3. Effective Date.*
This Local Emergency Order shall take effect immediately.

*Section 4. Duration of Local Emergency Order*
The Local Emergency Order shall remain in effect for five days unless sooner modified, extended, or revoked, and may be extended for additional periods not to exceed five days during the pendency of the local state of emergency.

*Section 5. Common Name*
This Order may be referred to as the "Rockland County Sustainable Migration Protocol."

**Page 5**

Dated:  May 6, 2023

_____

Edwin J. Day
County Executive
County of Rockland

_____

Michael K. Hoblin
Deputy County Executive
County of Rockland

# EXHIBIT 2

# Neuhaus declares State of Emergency in response to NYC plan to send asylum seekers to Orange County

Goshen, N.Y. – Orange County Executive Steven M. Neuhaus on Monday declared a State of Emergency for the County in response to New York City's proposed plan to send asylum seekers to be temporarily housed at motels in the Town of Newburgh.

The Executive Order reads as follows:

**WHEREAS,** there is a national immigration crisis at the border between the United States and Mexico
in that unprecedented and overwhelming numbers of migrants and asylum seekers are crossing over the open border of the United States; and

**WHEREAS,** the Federal government has failed or refused to anticipate and react to the exigent and emergent circumstances, resulting in thousands of migrants and asylum seekers crossing  the U.S. border; and

**WHEREAS,** the Governor of Texas has seen
fit to relocate thousands of migrants and
asylum seekers crossing the Texas border to New York City, rather than addr ess issues presented to its state and/or the Federal government; and

**WHEREAS,** the Mayor of New York City, Eric Adams has decried the fact that Governor Abbott has chosen to send such migrants and asylum seekers to those jurisdictions with minority mayors, he has in a similar fashion sent

the same migrants and asylum seekers to targeted republican controlled counties, failing and refusing to send the same to democrat controlled counties; and

**WHEREAS**, the Mayor, although declaring New York City a sanctuary city, has failed and refused to adequately address the needs of such migrants and asylum seekers transferred to New York City, and decided to abdicate his duty and responsibility to those migrants and asylum seekers, transferring said duties and responsibilities to the County of Orange Government; and

**WHEREAS,** The City of New York is advertising and printing brochures for migrants and asylum seekers promoting long-term housing solutions in Orange County for at least four months and which is believed will be longer, if not permanent; and

**WHEREAS,** according to the promotional brochures by New York City, that migrants/asylum seekers will also receive medical care, food, laundry and other necessities, only initially to be funded by the City of New York; and

**WHEREAS,** Mayor Adams has represented to Orange County officials that approximately only 60 adult male migrant and/or asylum seekers will be transported to Orange County. However, Orange County has since learned that the Adams administration has also sought to house additional hundreds of migrants and/or asylum seekers at additional locations without notifying Orange County, and as a result Orange County can no longer rely on the representations of New York City officials; and

**WHEREAS,** there is no reason to believe that these migrants or asylum seekers will leave Orange County after New York City ceases to pay for the housing and any services they are presently receiving in New York City, or that many thousands more migrants or asylum seekers will not be

transported to Orange County; and

**WHEREAS,** there is reasonable apprehension of immediate danger of public emergency of potentially thousands of persons being transported to Orange County and that Orange County will be responsible for the public safety of these persons and all others effected in Orange County; and

**WHEREAS,** The County of Orange is not capable of receiving and sustaining such volume of migrants and asylum seekers that New York City intends to or hereafter does transport to the County, whose presence will spike the number of people in need of government services at all levels of government in the County; and

**WHEREAS,** there is no legal basis to provide adequate services to these migrants or asylum seekers by the County's Department of Social Services because of their age and immigration status; and

**WHEREAS,** The County of Orange anticipates potential civil disobedience and protesting on this issue both for and against the transportation of migrants/asylum seekers to Orange County; and

**WHEREAS,** local zoning codes do not allow the use of temporary residence hotels or other temporary residence facilities for use as long-term residential housing and therefore New York City's transportation of migrants and asylum seekers to Orange County for that purpose is illegal; and

**WHEREAS,** through enforcement of local zoning codes, said migrants and/or asylum seekers will face refusal, or eviction from the illegal hotels and short-term residential facilities, resulting in large-scale homelessness for these migrants and asylum seekers; and

**WHEREAS,** as all temporary housing shelter beds in Orange County are currently at maximum capacity and cannot accommodate additional homeless individuals; and

**WHEREAS,** the locations for which Mayor Adams intends to transport said migrants and/or asylum seekers have inadequate infrastructure to meet the needs of said individuals, including but not limited to transportation to work, food, medical care, and pharmaceutical opportunities; and

**WHEREAS,** that due to the above circumstances, I find reasonable apprehension of immediate danger thereof that public safety is imperiled thereby, for not only the migrant and asylum seekers, but also to the other affected residents of Orange County; and

**NOW, THEREFORE,** I hereby declare, in order to protect life and property, or to bring the emergency situation under control, a State of Emergency in the County of Orange and make the following ORDER:

I Order that all hotels, motels and/or any facilities allowing short-term rentals do not accept said migrants and/or asylum seekers for housing within Orange County.

This proclamation/declaration and the orders in relation thereto are pursuant to my powers contained within the Orange County Charter (Section 3.02-0) and Administrative Code (Section 3-2-q) and Section 24 of the Executive Law of the State of New York

**I FURTHER FIND** that this State of Emergency does not in any way impact travel or County employees or County operations, is not weather related, and does not suspend County operations. This Executive Order and all portions thereof shall take effect immediately, be filed and published as required by law, and individually expire as required by law.

Steven M. Neuhaus

Orange County Executive