UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDI MOUHAMED DEIDE, ADAMA SY, ABDALLAHI SALEM, MOUHAMED SAID MALOUM DIN, and JHONNY NEIRA on behalf of himself and all similarly situated people,<br><br>Plaintiffs,<br><br>v.<br><br>EDWIN J. DAY as Rockland County Executive; STEVEN M. NEUHAUS as Orange County Executive,<br><br>Defendants. | Case No. 23-cv-3954 (NSR) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION

AMY BELSHER
IFEYINWA CHIKEZIE*
ANTONY GEMMELL
GUADALUPE V. AGUIRRE
CHRISTOPHER DUNN
125 Broad Street, 19th Floor
New York, New York 10004
212-607-3300
abelsher@nyclu.org
ichikezie@nyclu.org
agemmell@nyclu.org
laguirre@nyclu.org

Dated: May 22, 2023
       New York, New York

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.    THE CASE IS NOT MOOT. ................................................................................... 1

    II.   NO BASIS EXISTS FOR THIS COURT TO ABSTAIN. .................................... 3

    III.  IRREPARABLE HARM, THE EQUITIES AND THE PUBLIC INTEREST ............... 5

    IV.  THE PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ......................... 7

# TABLE OF AUTHORITIES

**Cases** ................................................................................................................................Page(s)

*All. of Am. Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988)......................................................3, 4

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105 (2d Cir. 2016) .......................2

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)................................................7

*Averhart v. Annucci*, No. 21-CV-383 (NSR), 2021 WL 2383556 (S.D.N.Y. June 10, 2021).........6

*Booker v. Griffin,* No. 16-CV-00072 (NSR), 2018 WL 1614346 (S.D.N.Y. Mar. 31, 2018) .........5

*City of Cleburne, Tex. V. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ....................................9

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982).....................................................2

*Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976).................3, 4

*Dittmer v. Cty. of Suffolk*, 146 F.3d 113 (2d Cir. 1998)..............................................................4, 5

*Elrod v. Burns*, 427 U.S. 347 (1976) ..............................................................................................5

*King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 649 (2d Cir. 1971)..................................9

*Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232 (S.D.N.Y. 2020).........................................1, 2

*Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir. 2016).............................................2

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997).......................................................4

*Pharm. Soc. of State of New York, Inc. v. Lefkowitz*, 586 F.2d 953 (2d Cir. 1978).........................3

*Saenz v. Roe*, 526 U.S. 489, 499 (1999) ......................................................................................7, 8

*Shapiro v. Thompson*, 394 U.S. 618, 631 (1969)............................................................................9

*Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.,* 17 F.3d 46 (2d Cir. 1994) ..............................................4

*Smith v. Fredrico*, No. 12-CV-04408, 2013 WL 122954 (E.D.N.Y. Jan. 8, 2013) ........................6

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013).....................................................................5

*Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007) ...................................8

*Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000).............................................3

*Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)...................................................9

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517 (2d Cir. 2001)..................3

**PRELIMINARY STATEMENT**

In opposing the plaintiffs' motion for preliminary injunctive relief, the defendants raise meritless abstention and mootness arguments while failing to meaningfully dispute or even engage with the substance of the plaintiffs' claims. Throughout, the defendants attempt to recast this case as concerning the advisability or legality of New York City's program to provide transportation and shelter for the putative class. Those questions are not before this Court; instead, this case concerns the defendants' attempt to usurp the federal government's authority to regulate noncitizens and the plaintiffs' fundamental constitutional rights to move freely, and free of discrimination, in New York State.

**ARGUMENT**

**I.    THE CASE IS NOT MOOT.**

On the threshold issue of mootness, Orange argues the claims of the four named plaintiffs able to relocate to the county are moot because "they have already received the relief they seek" by virtue of a state court temporary restraining order against New York City that allows the four to remain in Orange for the pendency of the order. *See* Def.'s Opp'n to Mot. for Prelim. Inj. ("OC Opp'n"), ECF 29, at 14. Setting aside that a live controversy remains with the other named plaintiff, the claims of the four plainly are not moot, as they have received no relief at all— indeed, are not even parties to the state court action—and instead simply are the temporary beneficiaries of Orange's failure to obtain the complete TRO it sought. The county has made no representation to this Court that it does not intend to enforce its order once the TRO expires. Given the continuing threat of enforcement, the four plaintiffs' challenge to the order is not moot. *See Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 255 (S.D.N.Y. 2020) ("Where, as here, Defendants may later resume the challenged conduct, an injunction provides effectual relief because it precludes the defendant from reviving the challenged conduct." (cleaned up)).

Relatedly, Rockland suggests it effectively mooted the plaintiffs' claims by making changes to its order the day before it filed its opposition to the plaintiffs' motion.[1] *See* Def.'s Opp'n to Mot. for Prelim. Inj. ("RC Opp'n"), ECF 32, at 1. First, it points to a new, self-serving paragraph disclaiming any impermissible "purpose" for the order, *see id.*, but that does nothing to alter the order's operative terms. Second, Rockland asserts the amended order removes "any doubt that external municipalities, not migrants and asylum seekers are the subject of the same," *id.* at 2, but offers no explanation for this assertion and no explanation is apparent given that the order continues to speak specifically about the transport and housing of migrants. Finally, the alterations to some operative terms are merely cosmetic, changing references to "migrants or asylum seekers" to a variation of "persons, including migrants and asylum seekers." *See generally* Ex. H to Feiden Decl, ECF 31. Meanwhile, the original order's unambiguous targeting of migrants remains intact, including the blatantly unlawful direction to the County Sheriff: "[T]he Sheriff is authorized and directed by this order to make limited stops to notify persons suspected of transporting migrants or asylum seekers into the County . . . ." *Id.* Section 1.E. These changes do not save the order from constitutional and statutory infirmity.[2] *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) ("A claim will not be found moot if the defendant's change in conduct is merely superficial or ... suffers from similar infirmities as it did at the outset.") (internal quotation omitted); *Make the Rd. N.Y.*, 475 F.

---

[1] Orange also slightly changed its order shortly after the plaintiffs filed, *see* OC Opp'n at 2, but the county does not suggest or argue that bears on the Court's analysis.

[2] Even if Rockland were to materially revise or even withdraw its order, that would not moot out this case. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603-04 (2d Cir. 2016) (noting "suspicious timing and circumstances" cautioned against finding defendant had met "stringent" and "formidable" burden to show that "it is *absolutely clear* the alleged behavior could not reasonably be expected to recur" (emphasis in original)).

Supp. 3d at 255 ("Though there are differences between the [former orders] and the current [orders], at least some of the alleged harms associated with the [former orders] are still present in the most recent revisions.").

**II.      NO BASIS EXISTS FOR THIS COURT TO ABSTAIN.**

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, and the abstention doctrines comprise only "a few extraordinary and narrow exceptions" to this duty. *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 817 (1976)). Indeed, "when federal jurisdiction is proper, abstention is the exception, not the rule." *All. of Am. Insurers v. Cuomo*, 854 F.2d 591, 599 (2d Cir. 1988). The defendants raise four abstention doctrines, all inapplicable here.

***Pullman* doctrine-** In the Second Circuit, "[a]bstention under the *Pullman* doctrine may be appropriate when three conditions are met: (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000) (emphasis added) (internal quotation marks omitted). "The policy behind *Pullman* was to avoid friction between federal and state authorities in those cases where the federal court judgment could only be an advisory forecast of how the state's highest court would finally interpret state law." *Pharm. Soc. of State of New York, Inc. v. Lefkowitz*, 586 F.2d 953, 956 (2d Cir. 1978) (internal quotation omitted). Here, *Pullman* abstention is not warranted because the plaintiffs have moved for a preliminary injunction based only on violations of federal, not state law, and therefore, none of the required *Pullman* factors are satisfied.

***Colorado River* doctrine-** *Colorado River* abstention applies only "in those 'exceptional circumstances' where concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998) (quoting *Colorado River Water Conservation Dist*, 424 U.S. at 817). The Second Circuit has stated that "[f]ederal and state proceedings are 'concurrent' . . . for purposes of abstention when . . . there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997). Here, there is no identity of parties, which alone prevents invocation of *Colorado River* abstention. Additionally, the issues and relief sought are not the same: here, the plaintiffs seek relief pursuant to only federal claims not at issue in the state cases. Because this case is not concurrent with the state cases, this Court "need not examine the factors to determine whether exceptional circumstances" exist, and abstention is not warranted. *Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.,* 17 F.3d 46, 49 (2d Cir. 1994).

***Burford* doctrine-** There is a strong presumption against invoking *Burford* abstention. *See, e.g., id.* at 49. Under the doctrine, federal courts should abstain rather than "interfere with the orders or proceedings of state administrative agencies: (1) if there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) if the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Dittmer*, 146 F.3d at 116 (internal quotations omitted). *Burford* "abstention is appropriate when a federal case presents a difficult issue of state law . . . for which the state has provided a comprehensive regulatory system with channels for review by state courts or agencies." *All. of Am. Insurers*, 854 F.2d at 599.

4

The *Burford* doctrine is inapplicable because this matter does not deal with "the orders or proceedings of state administrative agencies." *Dittmer*, 146 F.3d at 116. Nor do the questions of state law in the defendants' state court cases "transcend" the importance of the plaintiffs' constitutional rights, which are at least equally if not more important than the counties' purported interest in excluding migrants. Additionally, the plaintiffs seek this preliminary injunction based on the defendants' federal constitutional and statutory violations, not "difficult issues of state law" for which New York State "has provided a comprehensive regulatory system."

***Younger* doctrine-** As for Rockland's invocation of *Younger* abstention, RC Opp'n at 23, this Court has explained that *Younger* arises only when a party to an ongoing state criminal prosecution or an akin civil proceeding asks a federal court to enjoin that state proceeding. *See Booker v. Griffin,* No. 16-CV-00072 (NSR), 2018 WL 1614346 (S.D.N.Y. Mar. 31, 2018) (discussing standards and rejecting abstention claim); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). The plaintiffs here do not seek to enjoin any state proceedings (indeed, are not parties to any of the proceedings the counties identify) but seek only invalidation of the county executive orders.

## III. IRREPARABLE HARM, THE EQUITIES AND THE PUBLIC INTEREST

On irreparable harm, Rockland rightly acknowledges "the alleged violation of constitutional rights, for even minimal periods of time, constitutes an irreparable harm," RC Opp'n at 11 (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)), and Orange implicitly does likewise, *see* OC Opp'n at 17 ("Of course, to show irreparable harm based on an alleged constitutional injury, a plaintiff must show a likelihood of success . . . .").[3] Since the plaintiffs present

---

[3] Rockland is mistaken that the plaintiffs need meet a higher standard to prevail here. The injunction they seek is prohibitory—a return to the status quo in place mere weeks ago before the defendants issued their orders. Nor would the injunction sought here give the plaintiffs

5

constitutional claims – notably, ones asserting express and intentional discrimination – the showing of irreparable harm is satisfied on that basis alone. *See Averhart v. Annucci*, No. 21-CV-383 (NSR), 2021 WL 2383556 (S.D.N.Y. June 10, 2021).[4]

As for the plaintiffs' showing of additional irreparable harm, Orange does not deny it would enforce its order and evict the plaintiffs; it states only that it is temporarily prevented from doing so. OC Opp'n at 17. Meanwhile, the situation in New York City has only become more dire since some of the plaintiffs were able to leave the overcrowded shelters there. Mayor Adams is now considering placing recently arrived migrants and asylum seekers in defunct jails, including one on Rikers Island described as "decrepit," "unfit," and likely "traumatizing" for newly arrived migrants. Ex. 1 to Belsher Supp. Decl. In contrast, as Plaintiff Neira attests, his shelter in Newburgh is comfortable and stable as compared to his shelter in Manhattan. Declaration of Jhonny Neira, ¶¶ 4-5. In attempting to distinguish the caselaw holding that the risk of being made homeless constitutes irreparable harm, Rockland incorrectly focuses on the question not before this Court of whether New York City has a right to contract with Rockland hotels to provide shelter. RC Opp'n 10-11. But it does not dispute that the result of excluding migrants from Rockland will be their placement in an overcrowded shelter or jail in New York City, to the extent class members can find shelter at all.

On the equities and public interest, the defendants ask this Court to judge whether New York City's program is a good or legal one. RC Opp'n 22; OC Opp'n 17-18. But here the issue is

---

substantially all the relief sought because, should the Court ultimately find against them, they can be evicted from their lodging and prevented from traveling and staying freely in the counties. Regardless, the plaintiffs meet the higher standard.

[4] Ignoring this Court's precedent, Orange relies on the inapposite *Smith v. Fredrico*, No. 12-CV-04408, 2013 WL 122954, at *7 (E.D.N.Y. Jan. 8, 2013), which concerned a question not presented here of whether a plaintiff seeking compensatory damages can show irreparable harm.

6

whether the plaintiffs' interest in their right to travel to and reside in the counties free of discrimination outweighs the defendants' speculative and unsubstantiated interest in incurring administrative burden or costs.[5] An injunction from this Court would not "condone" New York City's program, OC Opp'n 18, nor prevent the defendants from raising claims as to its legality in state court; rather, it would protect the plaintiffs from unlawful discrimination. Neither defendant contests that remedying constitutional violations is in the public's interest. Finally, to the extent the defendants question whether the shelter in these hotels is better for the plaintiffs than what shelter might—or might not—be available to them in New York City, it undoubtedly is. *See* Neira Decl. ¶¶ 4-5. The plaintiffs have made an informed choice to relocate and remain empowered to leave the counties should their situation there no longer suit their needs.

## IV. THE PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

**Supremacy Clause-** Orange responds only by asserting "it is well settled that no private right of action lies for a supremacy clause violation." OC Opp'n at 21 (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)). That has no bearing on this case, as the plaintiffs do not invoke the Supremacy Clause to create a private cause of action[6] but instead for the well-established principle that federal immigration law preempts local efforts to regulate noncitizens. *See Armstrong*, 575 U.S. at 326-27 (noting difference between preemption and private causes of action). Rockland's suggestion its order does not directly target migrants but instead prohibits municipalities from "deporting individuals to Rockland," RC Opp'n at 20, does nothing to change the fact its travel restrictions – and ban on local hotels housing migrants – seek

---

[5] Orange County suggests, but does not support by reference to any evidence, that the County will be responsible for hundreds, "if not thousands" of migrants at some future point in time. OC Opp'n 17. In any event, the Supreme Court has found this justification for excluding groups to be impermissible. *See Saenz v. Roe*, 526 U.S. 489, 499 (1999).
[6] In *Armstrong* the plaintiffs sought to use the clause to enforce a provision of the Medicaid Act.

7

to affect the travel and housing of noncitizens just as in the cases the plaintiffs cite. The Supremacy Clause claim alone entitles the plaintiffs to the preliminary injunction they seek.

**Intrastate Travel**- The defendants do not meaningfully dispute that their orders "actually deter[]" the plaintiffs from traveling to their counties, have "impeding travel [as] [their] primary objective," and "use[] a[] classification which serves to penalize the exercise of that right." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007) (citation omitted). Nor do the defendants contend with the long-standing Supreme Court and Second Circuit caselaw holding that a law enacted for the purpose of inhibiting migration by needy persons is "constitutionally impermissible." *See Saenz*, 526 U.S. at 499; *see also* Pls' Mem. in Supp. of Prelim. Inj. ("Pls' Mem."), ECF 13, at 13-14.

Defendant Neuhaus's claim "anyone is free to come or stay in Orange County" does not speak to this precedent and cannot be reconciled with his order's plain text or his statements explaining the order is intended to prevent asylum seekers from coming to the county. *See, e.g.,* Ex. 6 to Belsher Decl. ("I am opposed to these asylum seekers being sent to our communities."). Rockland's argument that its order has in no "way prevented" or even "affected" the plaintiffs' ability to travel to Rockland because the order speaks only of barring programs to transport and house migrants, RC Opp'n 16, defies logic and cannot be reconciled with Defendant Day's explanation for the order or the fact that the plaintiffs are presently barred from Rockland hotels.

The defendants suggest their orders place only "minor restrictions," if any, on the plaintiffs' travel. *See* OC Opp'n 20-21; RC Opp'n 16. These arguments ignore the reality of the plaintiffs' circumstance; as Plaintiff Neira notes, he would not have been able to travel to or stay in Orange absent the New York City program. Neira Decl. ¶ 6. The defendants are well-aware of this reality and issued the orders precisely to prevent migrants from relocating there. *See, e.g.*,

8

Ex. 18 (noting the order "tells the hotels here do not accept any of these asylum seekers"). And the plaintiffs need not show that the orders bar all methods of reaching these counties as defendants suggest, just that they burden the plaintiffs' right to do so. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (noting intrastate travel protects against "burden[s] imposed on their freedom to move between places otherwise open to their presence"). Neither defendant attempts to justify this burden on intrastate travel with a compelling, or even rational, government interest. Nor could they. *See King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 649 (2d Cir. 1971) (citing *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969)).

**Equal Protection-** Case law is clear—and the defendants do not dispute—that express classifications based on national origin and alienage automatically trigger strict scrutiny. *See City of Cleburne, Tex. V. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). These classifications are present here. The orders also evince racial discrimination—providing an additional trigger for strict scrutiny—as demonstrated by contemporaneous statements by the County Executives related to the orders which are laden with coded racist language. *See* Pls' Mem. at 18-19.

Rockland argues that even if strict scrutiny applies, the challenged orders are narrowly tailored to "preserving resources." RC Opp'n 19. The Supreme Court has foreclosed this justification: While a county may "ha[ve] a valid interest in preserving the fiscal integrity of its programs," it "may not accomplish such a purpose by invidious distinctions between classes of its citizens." *Shapiro*, 394 U.S at 633. The interest in resource preservation is also speculative and inconsistent with available information. *See supra* n.5. The defendants also claim an interest in preventing the establishment of temporary shelters. RC Opp'n 19; OC Opp'n 23. But neither order is narrowly tailored to shelters and instead broadly bar the transport and housing of migrants, including in Rockland's case for "any length of time." RC Opp'n 15.

**Section 1981**- Orange's response that the plaintiffs' Section 1981 claim must invoke an official policy, custom, or usage pursuant to 42 U.S.C. § 1983, OC Opp'n 23-24, does not undermine the plaintiffs' claim, as the executive orders are prototypical official policies, and the plaintiffs invoked Section 1983. *See* First Am. Complaint ¶ 39 (ECF 11). Orange's standing-like assertion that the record lacks evidence "regarding the race of the Plaintiffs," OC Opp'n 24, disregards the central point that its order targets noncitizens, and the record plainly establishes the plaintiffs are noncitizens, *see* Chavez Decl. ¶ 3 (May 15, 2023); *see also* Neira Decl. ¶ 7 (identifying most migrants in his hotel shelter in Orange as sharing his South American national origin or as coming from Latin America, Africa, and the Middle East). Finally, the county's right-to-travel and "ersatz" shelter arguments, *see* OC Opp'n 24, have nothing to do with the undisputed fact the order expressly impairs contracts with those seeking to provide housing to migrants. That the county claims a nondiscriminatory "purpose" – contrary to all available evidence – does not change the express terms of its order.

As for Rockland, its argument that its targeting of migrants and asylum seekers "merely mirrored the City's use of the words," RC Opp'n 20, does not change the fact its order targets migrants and asylum seekers, a class Rockland does not dispute falls within Section 1981. And for the reasons discussed above, its last-minute changes to the order, *see id*. at 21, do not render the order neutral with respect to migrants and asylum seekers.

**Title II Public Accommodations**- Orange only repeats its Section 1981 arguments, *see* OC Opp'n 24-25, which are meritless for the same reasons. Similarly, Rockland only repeats its factual assertion that its order does not target migrants or asylum seekers, *see* RC Opp'n 21, which is wrong for the reasons noted above, *see supra*.

Dated: May 22, 2023
       New York, New York

                                  NEW YORK CIVIL LIBERTIES UNION FOUNDATION

*/s/ Amy Belsher*
AMY BELSHER
IFEYINWA CHIKEZIE*
ANTONY GEMMELL
GUADALUPE V. AGUIRRE
CHRISTOPHER DUNN
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: 212-607-3300
abelsher@nyclu.org
agemmell@nyclu.org
laguirre@nyclu.org
cdunn@nyclu.org

*Counsel for Plaintiffs*

\* Application for admission to the SDNY pending