UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDI MOUHAMED DEIDE, ADAMA SY, ABDALLAHI SALEM, and MOUHAMED SAID MALOUM DIN,<br><br>                Plaintiffs,<br><br>   v.<br><br>EDWIN J. DAY as Rockland County Executive; STEVEN M. NEUHAUS as Orange County Executive,<br><br>                Defendants. | Case No. 7:23-cv-3954 (NSR) (VR) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... II
INTRODUCTION ..................................................................................................................... 1
BACKGROUND ....................................................................................................................... 2
ARGUMENT ............................................................................................................................. 4
    I.    THE PLAINTIFFS HAVE LIVE CLAIMS AGAINST THE DEFENDANTS' ONGOING EFFORTS TO EXCLUDE THEM. ...................................................................... 5
    II.    THE PLAINTIFFS HAVE LIVE CLAIMS AGAINST THE DEFENDANTS' PRIOR ORDERS. ............................................................................................................................. 7
        A.    The Defendants' Voluntary Cessation of Their Unlawful Conduct Does Not Moot the Plaintiffs' Claims. ................................................................................................. 8
        B.    The Defendants' Orders Are Capable Of Repetition Yet Evade Review Due To Their Short Duration. .................................................................................................11
CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases** ................................................................................................................................Page(s)

*Already, LCC v. Nike, Ince.*, 568 U.S. 85 (2013)...................................................................5, 6, 8

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.,* 815 F.3d 105 (2d Cir. 2016) ..........5, 7, 9, 13

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)..........................................2

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) ...................................................................................................................................8

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982).....................................................10

*Deide v. Day*, No. 23-CV-3954 (NSR), 2023 WL 3842694 (S.D.N.Y. June 6, 2023)............3, 5, 9

*Floyd v. Filipowski*, No. 21-CV-4096 (NSR), 2022 WL 2657173 (S.D.N.Y. July 8, 2022).....8, 10

*Haley v. Pataki*, 60 F.3d 137 (2d Cir. 1995).....................................................................................9

*Highview Properties D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5 (S.D.N.Y. 2022) .........13

*Knox v. Serv. Emps. Int'l Union, Local 1000,* 567 U.S. 307 (2012)..................................................4

*Knox v. Serv. Emps. Int'l Union, Local 1000,* 132 S. Ct. 2277 (2012) ............................................8

*Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365 (2d Cir. 2004)..7

*Lloyd v. City of New York*, 43 F. Supp. 3d 254 (S.D.N.Y. 2014) ............................................11, 12

*Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232 (S.D.N.Y. 2020)..........................5, 9, 11

*Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir. 2016)....................................4, 8, 11

*Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126 (S.D.N.Y. 2019) .................9

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)........................................10

*Russman v. Bd. of Educ. of Enlarged City Sch. Dist.*, 260 F.3d 114 (2d Cir. 2001) .....................12

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ..........................................................................10, 13

*36 Apt. Assocs., LLC v. Cuomo*, 860 F. App'x 215 (2d Cir. 2021) ...............................................13

**Statutes, Rules and Regulations**

New York Exec. Law § 24(1) ..................................................................................................6, 12

Social Services Law § 62.................................................................................................................6

## INTRODUCTION

The defendants have not met their formidable burden of demonstrating the plaintiffs' claims in this case are moot. After spending most of their brief providing a revisionist history of this case, the defendants make three arguments in support of their motion to dismiss the plaintiffs' claims. First, the defendants argue that this case is moot because the defendants have ceased their challenged conduct, asserting—despite this Court's preliminary injunction—that it never began. But the challenged conduct—the defendants' efforts to exclude the plaintiffs from their counties through executive orders—is ongoing and inflicting the same harms on the plaintiffs. And the plaintiffs are pursuing their claims against the defendants' revised orders, which were issued pursuant to the same purported state of emergency and motivated by the same discriminatory animus as their prior orders.

Second, the defendants argue that there is no reasonable expectation they will reinstate their prior orders because this Court's preliminary injunction currently prevents them from doing so and because they have replaced those orders with new versions. The defendants' decision to replace presently unenforceable orders with revised versions demonstrates only that their executive orders can be rescinded and reissued with ease, and nothing would prevent them from reinstating the prior versions absent this Court's order. Third, the defendants argue that the default duration of their orders—thirty-days—is not too short to evade review because the plaintiffs were able to obtain *preliminary* relief against the original versions. But the relevant inquiry is whether the duration of the defendants' orders is too short to be *fully* litigated, not whether the plaintiffs can obtain preliminary review. As a result, this Court should deny the defendants' attempt to dismiss as moot the plaintiffs' live claims against the current and former versions of the defendants' orders.

1

**BACKGROUND**

In resolving a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), this Court must accept all uncontroverted facts in the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction.[1] *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In this action, the plaintiffs—a putative class of migrants and asylum seekers who wish to relocate to Orange and Rockland Counties—challenge the defendants' efforts to exclude them from traveling to and residing within their counties, including through the issuance of emergency declarations and executive orders. *See generally* First Am. Compl. ("FAC"), ECF No. 11.

In early May, the defendants, the County Executives of Orange and Rockland Counties, declared local states of emergency in response to the intention of migrants and asylum seekers to relocate to those counties as part of a voluntary New York City-funded program. *See* Rockland Emergency Declaration, Ex. 1 to Decl. of Amy Belsher in Supp. of Pls' Opp'n to Mot. to Dismiss ("Belsher Decl."); Orange County Emergency Declaration and Order ("OC EO 1"), Ex. 2 to Belsher Decl. At the same time, the defendants issued executive orders to address this purported emergency, placing restrictions on the migrants and asylum seekers' ability to travel to and find shelter within the defendants' counties.

On May 15, the plaintiffs moved to enjoin the counties' then-operative executive orders. While the parties were briefing that motion, the defendants each amended their executive orders, replacing the prior orders with slightly revised versions. Neither defendant argued that these

---

[1] The defendants include numerous inaccurate and irrelevant statements in the background section of their brief, including an attempt to relitigate the basis of their emergency declarations and orders by reference to emergency declarations issued elsewhere. *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 2–7. The plaintiffs do not respond to those characterizations here as they are irrelevant to the defendants' arguments in the motion to dismiss.

2

revisions to their orders mooted the plaintiffs' claims and, notwithstanding these changes, this Court granted a preliminary injunction prohibiting the counties from enforcing their orders. *See generally Deide v. Day*, No. 23-CV-3954 (NSR), 2023 WL 3842694, at *1 (S.D.N.Y. June 6, 2023).

Within days of this Court enjoining the defendants' executive orders designed to exclude migrants and asylum seekers from relocating to their counties, both counties again issued revised orders that seek to do just that. On June 7, Defendant Neuhaus issued a new declaration of emergency defining the "emergency" in the same terms[2] as his original emergency declaration: the arrival of migrants, including the plaintiff class, to Orange County as part of New York City's voluntary program; the inadequacy of the shelter chosen by New York City; the inability to the county to meet the needs of the new arrivals; and a risk of civil disobedience. *Compare* OC EO 1 *with* Orange County Executive Order No. 3 ("OC EO 3"), Ex. 3 to Belsher Decl.[3] This revised order barred "hotels, motels and/or any facilities allowing short term rentals" from "accept[ing] individuals transported to Orange County in violation" of New York State law and administrative guidance. OC EO 3 at 2. The order does not explain how employees at these short-term rental facilities should determine how a person was transported to the county and whether any financial support for their transportation and housing complied with a complex web of state law and administrative guidance regulating the conduct of municipal governments.

---

[2] While Defendant Neuhaus changed the terms "migrants and asylum seekers" to "homeless persons," the declaration is plainly referring to the same people as before: the putative plaintiff class of migrants and asylum seekers.

[3] Defendant Neuhaus has since renewed this same declaration and accompanying order several times without substantive changes. Defs.' Mem. at 9.

3

Similarly, on June 14, Rockland County issued a revised executive order responsive to New York City's relocation program requiring, *inter alia*, other municipalities and the "owner or operator of any location within the County" to obtain "the written permission of the County Executive" to temporarily house people in the county. Rockland County Executive Order 2 ("RC EO 2") at 3, Ex. 4 to Belsher Decl. This order provides Defendant Day with unfettered discretion to determine whether such a program is "acceptable"; complies with federal, state, and local laws; and preserves the "life, liberty and property" of county residents. *Id*.

While the defendants have made several, largely cosmetic, changes to their prior orders, they do not deny that the intention of these orders remains the same: to prevent the relocation of migrants and asylum seekers to their counties.

## ARGUMENT

On a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) the defendant bears a "stringent and [] formidable burden" of proving the plaintiff's claims are moot. *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603–604 (2d Cir. 2016). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000,* 567 U.S. 307 (2012) (cleaned up).

The plaintiffs' claims are not moot because the defendants' discriminatory attempts to exclude the plaintiffs from their counties through executive orders has not ceased and the plaintiffs are currently pursuing their claims against the defendants' revised orders. Moreover, the plaintiffs' claims against the defendants' original orders are not moot under two well-established exceptions to mootness discussed below.

4

I.   **THE PLAINTIFFS HAVE LIVE CLAIMS AGAINST THE DEFENDANTS' ONGOING EFFORTS TO EXCLUDE THEM.**

The parties agree the threshold inquiry in analyzing mootness is "whether the challenged conduct has, in fact, ceased." Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), 12 (quoting *Am. Freedom Def. Initiative v. Metro. Transp. Auth.,* 815 F.3d 105, 109 (2d Cir. 2016)). Here, the challenged conduct—the defendants' attempts to exclude the plaintiffs from their jurisdiction through executive orders that place restrictions on their transportation and housing—is ongoing.[4] After this Court enjoined their original orders, the defendants issued revised orders pursuant to the same purported state of emergency. And the defendants do not deny that their revised orders have the same aim as their predecessors—to prevent the "emergency" presented by the putative plaintiff class from relocating to their counties as part of New York City's relocation program. *See Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 255 (S.D.N.Y. 2020) ("Though there are differences between the [former orders] and the current [orders], at least some of the alleged harms associated with the [former orders] are still present in the most recent revisions.").

Instead, the defendants argue their revised orders "simply mandate compliance with state law" and so "step cleanly into the state law space the PI carved out." Defs.' Mem. at 2. The

---

[4] The defendants assert that the challenged conduct "never even began" because some of the plaintiffs were permitted to enter a hotel in Orange County. Defs.' Mem. at 12. But this Court has already rejected the defendants' recycled standing argument with respect to the plaintiffs in Orange County. *See Deide*, 2023 WL 3842694, at *10 (holding that this action is not moot as to the migrants and asylum seekers who had been relocated to hotels through the New York City program); *see also* ECF No. 87 at 2 (noting that the Court already "addressed Defendants' standing argument" when issuing preliminary injunction). Nor is it relevant that the defendants were unable to fully enforce their orders before the plaintiffs were able to secure preliminary relief. Defs.' Mem. at 12.

revised orders do neither.[5] On their face, the orders go much further than simply demanding compliance with existing law. *See supra* 3-4. Through their executive orders, the defendants give themselves unfettered, discretionary decision-making authority over the ability of the plaintiffs to reside in their counties. For example, the plaintiffs may be prevented from relocating to Rockland County as part of New York City's program *even if* that program is entirely consistent with New York State law and guidance should Defendant Day decide the program is not "acceptable" or does not, in his opinion, sufficiently protect the "liberty" of Rockland's residents. RC EO 2, Section 1(A)(2). Moreover, the orders create new penalties and imposes obligations beyond those in existing law against hotels and other entities not otherwise subject to the New York State law cited in the defendants' orders.[6] *Id.* at Section 1(A)(3), (C); OC EO 3 at 2 (prohibiting hotels, motels and/or any facilities from allowing short term rentals in violation of Social Services Law Section 62). Nevertheless, contrary to the defendants' suggestion, Defs.' Mem. at 2, it remains the case that this Court need not reach the question of whether New York City's relocation program violates the state and local laws cited in the revised orders to rule on the plaintiffs' claims.

---

[5] Even if true, the defendants' orders would be *ultra vires* under Executive Law Section 24 which permits County Executives the use of emergency powers to issue orders that are necessary to "protect life and property or to bring the emergency situation under control." New York Exec. Law § 24(1). Simply restating what the law already requires does nothing to address any purported emergency.

[6] Social Services Law Section 62, the focus of the defendants' revised orders, speaks only to the duties of "public welfare districts" in the State. Social Services Law § 62 ("[E]ach public welfare district shall be responsible for the assistance and care of any person who resides or is found in its territory and who is in need of public assistance and care which he is unable to provide for himself."). Nevertheless, Defendant Neuhaus's revised order requires "hotels, motels and/or any facilities allowing short term rentals" to determine whether persons were transported to Orange County in violation of this law and related guidance. This required inquiry into the circumstances of a person's background, finances, and arrival in the county, is highly likely to result in the harassment of people perceived to be non-white, foreign-born, or lacking in citizenship.

6

The issues before the Court remain, *inter alia*, whether these orders unconstitutionally limit the plaintiffs' freedom of movement, are motivated by discriminatory animus, and exceed the defendants' statutory authority under Section 24 of the New York Executive Law. The defendants' orders therefore are not "sufficiently altered so as to present a substantially different controversy from the one that existed when suit was filed." *Am. Freedom Def. Initiative*, 815 F.3d at 109.

In sum, the revised orders contain "merely superficial" changes, "suffer[] from similar infirmities" as the original orders, and the controversy is much the same as the one that existed when the plaintiffs filed suit. *Id.* (quoting *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 378 (2d Cir. 2004)). Accordingly, the plaintiffs are currently pursuing, with the sanction of this Court,[7] the same live claims raised in the First Amended Complaint against these continued efforts. *See* FAC at 11 (requesting that the Court "[e]njoin the defendants from interfering with the plaintiffs' travel to and within" the counties and their "housing or other means of shelter within" the counties).

## II. THE PLAINTIFFS HAVE LIVE CLAIMS AGAINST THE DEFENDANTS' PRIOR ORDERS.

Independent of the live claims they have against the defendants' *revised* orders, the plaintiffs maintain live claims against the defendants' *original* orders under two exceptions to the mootness doctrine. First, the defendants do not meet their heavy burden of demonstrating that either their compliance with this Court's injunction or their voluntary replacement of their

---

[7] The plaintiffs are currently in the process of obtaining court-ordered discovery from the defendants concerning their revised orders in anticipation of seeking further preliminary relief. Court Orders, ECF Nos. 64, 87. The defendants—who are well-aware of this—nevertheless express confusion as to why the plaintiffs have not yet filed their motion, suggesting the delay has something to do with the motion's strength, Defs.' Mem. at 2, and not their own ongoing, months-long delay in producing the expedited discovery this Court ordered.

7

enjoined orders with revised versions moots the plaintiffs' claims. Second, the defendants' orders fall cleanly within the exception for conduct capable of repetition yet evading review.

      **A.    The Defendants' Voluntary Cessation of Their Unlawful Conduct Does Not Moot the Plaintiffs' Claims.**

"The mere voluntary cessation of an unlawful practice by a party will usually not moot its opponent's challenge to that practice." *Floyd v. Filipowski*, No. 21-CV-4096 (NSR), 2022 WL 2657173, at *4 (S.D.N.Y. July 8, 2022) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001)). Thus, as this Court has noted, "a defendant cannot automatically moot a case by simply ending its unlawful conduct once sued." *Id.* (quoting *Already, LCC v. Nike, Ince.*, 568 U.S. 85, 91 (2013)). The voluntary cessation of challenged conduct will not "ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000,* 132 S. Ct. 2277, 2287 (2012) (cleaned up). Accordingly, a defendant's voluntary change of conduct renders a case moot only if the defendant meets its "formidable" burden of showing (1) "it is *absolutely clear* the alleged behavior could not reasonably be expected to reoccur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc.*, 819 F.3d at 603 (emphasis added and quotation omitted).

      Here, the defendants make two arguments that their changed conduct moots this case. First, they argue that this Court's preliminary injunction moots the plaintiffs' claims. Defs.' Mem. at 14 ("Plaintiff's [sic] underlying claims have been mooted by their own success in obtaining a PI at the outset of litigation."). Specifically, the defendants argue there is no "reasonable expectation that the alleged violation will recur" because (1) they did not appeal this Court's preliminary injunction and (2) this Court's injunction "irrevocably eradicated the effects

8

of the alleged violation." Defs.' Mem. at 12 (citing *Am. Freedom Def. Initiative*, 815 F.3d at 110). Setting aside whether cessation of challenged conduct due to a court order constitutes "voluntary" cessation, a case "does not become moot simply because a court order redressing the alleged grievance has been obeyed." *Haley v. Pataki*, 60 F.3d 137, 140–41, 142 (2d Cir. 1995) (cleaned up). This Court previously rejected Defendant Neuhaus's similar argument that a state court order temporarily preventing the enforcement of his executive order mooted the plaintiffs' claims. *Deide*, 2023 WL 3842694, at *10 ("the Orange County Defendant has made no representation to this Court that it does not intend to enforce its order once the temporary restraining order expires." (citing *Make the Rd. N.Y.*, 475 F. Supp. 3d at 255)).

Moreover, the defendants misread the sole case they cite in support of these arguments. In *Am. Freedom Def. Initiative*, the Second Circuit found the defendants had met "their heavy burden" to overcome this mootness exception because they did not appeal the district court's *final* decision in the case—not a preliminary injunction—which collaterally estopped the plaintiffs from re-litigating the constitutional question at issue in that case in the future.[8] 815 F.3d at 110. No such final judgment or corresponding estoppel is present here. Nor did "the interim relief granted by the [C]ourt 'irrevocably eradicate[] the effects of the alleged violation.'"

---

[8] The Court also granted "some deference" to the defendants' repeated representations on the record that they would not apply the challenged policy to the plaintiffs' advertisement. *Am. Freedom Def. Initiative*, 815 F.3d at 110. The defendants have made no such representations here and their bare, unsworn assertion that there is no reasonable expectation the conduct will resume is entitled to no deference. *See Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 138 (S.D.N.Y. 2019) (collecting cases and finding government did not demonstrate mootness where it "has not categorically stated" it would not resume the challenged conduct "but only that 'there is no reasonable expectation' that it will").

Defs.' Mem. 12. This Court's *preliminary* injunction only temporarily prevents the defendants from enforcing their orders.⁹

Second, the defendants suggest that their decision to replace their original orders with revised versions moots the plaintiffs' claims. Defs.' Mem. at 12. But the defendants have presented nothing to suggest that they cannot and will not simply re-issue and enforce their original orders against the plaintiffs the moment they are able to do so. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (noting "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated").

A recent decision of this Court is instructive on this point. In *Floyd v. Filipowski*, the Court considered a challenge to New York State's then-operative executive orders concerning the Covid-19 pandemic. 2022 WL 2657173 at *2-3. The Court derived "two mootness principles" from the Supreme Court's recent guidance for assessing mootness in challenges to such orders. *Id.* at *4 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020); and then citing *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021)). Applying these principles, this Court found that the Governor's decision to rescind the challenged orders did not moot the plaintiff's claims in large part because, despite the state legislature's curtailment of the Governor's authority to issue further Covid-19 restrictions, "the Governor retains the ability to extend or modify currently existing [orders]." *Id.*

---

⁹ While the defendants correctly note the plaintiffs are presently excluded from the counties by their current orders, Defs.' Mem. at 13, neither this Court's injunction nor the temporary state court orders cited by the defendants "irrevocably eradicate" the risk that the plaintiffs may be evicted from their housing in Orange County or prevented from traveling to the counties by the defendants' orders.

Here, *no* barriers, beyond this Court's order, curtail the defendants' authority to reissue their original orders. And all available information, including the "suspicious timing and circumstances" of the defendants' new orders, the defendants' pursuit of state court litigation to prevent the plaintiffs from relocating, and the defendants' recent public statements[10] all suggest the defendants remain committed to excluding the plaintiffs from their counties. *Mhany Mgmt., Inc.*, 819 F.3d at 603-04; *see also Make the Rd. N.Y.*, 475 F. Supp. 3d at 255 ("Where, as here, Defendants may later resume the challenged conduct, an injunction provides effectual relief because it precludes the defendant from reviving the challenged conduct." (cleaned up)). Thus, the plaintiffs "remain under constant threat" that the county executives could re-issue their prior executive orders. *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 (rejecting argument that challenge to Governor Cuomo's executive orders was moot because the plaintiffs "remained under constant threat" that those orders could once again be applied to them).

### B. The Defendants' Orders Are Capable Of Repetition Yet Evade Review Due To Their Short Duration.

The defendants' prior orders are also still subject to review under a separate exception to the mootness doctrine "for challenged actions that are 'capable of repetition, yet evading review.'" *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 269–70 (S.D.N.Y. 2014) (citation omitted). That exception applies where two conditions are met: "the challenged action is in its

---

[10] *See, e.g.*, Neuhaus Facebook Video, July 13, 2023, Ex. 5 to Belsher Decl. (explaining that "none of these counties want [recently-arrived immigrants] because none of them want them to sit in a hotel and not do anything"); Neuhaus Facebook Video, July 27, 2023, appended as Ex. 6 to Belsher Decl. ("I said [to Adams] look even the counties that say they want the asylum seekers don't want them there because they don't want them to sit and be parked in the hotel."); Day Press Release, September 27, 2023, Ex. 7 to Belsher Decl. (condemning Mayor Adam's "scheme to unload its failed homeless and Sanctuary City policies, by exporting its homeless residents to be backfilled with migrants."); Day Press Release, August 25, 2023, Ex. 8 to Belsher Decl. "County Executive Sends Letter to Gov. Hochul Regarding NYC Court Filing About Migrant Crisis" (appending letter to Governor Hoch "criticizing Mayor Eric Adams for filing court documents to export his migrant crisis to other localities").

11

duration too short to be fully litigated prior to cessation or expiration"; and "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist.*, 260 F.3d 114, 119 (2d Cir. 2001).

The first condition is met here because, as the defendants admit, their emergency declarations "expire[] automatically after thirty days," Defs.' Mem. at 1, unless renewed or rescinded prior to that point in time, N.Y. Exec. Law § 24(1) ("Such proclamation shall remain in effect for a period not to exceed thirty days or until rescinded by the chief executive, whichever occurs first."). The defendants—who have repeatedly asserted their original orders "automatically expired" on their own terms, Defs.' Mem. at 7–8—do not dispute that the default duration of the orders is too short for the orders to be fully litigated prior to their expiration. Instead, the defendants argue the orders did not evade review because the plaintiffs secured a preliminary injunction. *Id.* at 13. But the question is not whether the plaintiffs can secure preliminary relief; it is whether the orders can be *fully* litigated prior to their expiration. Nor is it relevant that the defendants *may* extend the orders as they suggest. *Id*. That the defendants have the power to enact, rescind, or renew these orders at will demonstrates only the difficulty inherent in litigating a challenge to such orders. *See Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 68 (finding challenge to executive order was not moot because the Governor was able to amend those orders without prior notice).

As for the second condition, there is a reasonable expectation that the plaintiffs will be subjected to the defendants' prior orders again given the defendants' continued efforts to prevent the relocation of migrants and asylum seekers to their counties and the lack of any barrier beyond this Court's preliminary injunction preventing them from doing so. *See Lloyd*, 43 F. Supp. 3d at 270. The defendants argue that there is no such reasonable expectation because their orders "are

enjoined" and this Court's preliminary injunction is "entirely dispositive regarding the mootness issue." Defs.' Mem. at 13–14 (citing *Am. Freedom Def. Initiative*, 815 F.3d at 110). Once again, the defendants confuse preliminary relief with final relief, and their reliance on *Am. Freedom Def. Initiative* for this proposition is misplaced for the reasons discussed above.

The defendants also argue that the facts here are analogous to those present in this Court's decision in *Highview Properties D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 25 (S.D.N.Y. 2022), claiming that the defendants' original orders "expired by [their] own terms." Defs.' Mem. at 13–14. But the counties' prior orders did not expire on their own terms; they were rescinded and replaced with revised versions.[11] *See, e.g.*, RC EO 2 (declaring "I hereby rescind Emergency Order No. 1-1 and enact this Emergency Order No. 2"). In any event, in *Highview Properties* this Court recognized that, "when a challenged statute or regulation expires during litigation, 'that does not necessarily moot the case' when the plaintiffs can show that they 'remain under a constant threat that government officials will use their power to reinstate the challenged restrictions.'" 606 F. Supp. 3d at 25 (quoting *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021)). And the Court found no such threat in that case in large part due to the intervening passage of legislation, which suggested there was no reasonable expectation of the reissuance of the challenged orders.[12] *Id*. In contrast, absent this Court's order, no legislation—or any other barrier—prevents the counties from re-enacting their prior orders here.

---

[11] Beyond the clear language in the orders themselves, the defendants' claim suggests that the revised orders went into effect before the prior versions "expired," leaving two contradictory executive orders in place at the same time.

[12] The defendants' cite to *36 Apt. Assocs., LLC v. Cuomo*, Defs.' Mem. at 10, is inapposite for the same reason: the Second Circuit grounded its mootness holding in that case on the intervening passage of legislation, *see* 860 F. App'x 215, 217 (2d Cir. 2021) ("[I]n the circumstances presented, including the intervening passage of legislation, we are not persuaded that there is 'a reasonable expectation of recurrence.'" (citation omitted)).

## CONCLUSION

For the foregoing reasons, this Court should deny the defendants' motion to dismiss.

Dated: October 5, 2023  
New York, New York

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

*/s/ Amy Belsher*  
AMY BELSHER  
IFEYINWA CHIKEZIE  
TERRY DING  
GUADALUPE V. AGUIRRE  
CHRISTOPHER DUNN  
New York Civil Liberties Union Foundation  
125 Broad Street, 19th Floor  
New York, N.Y. 10004  
Tel: 212-607-3300  
abelsher@nyclu.org  
ichikezie@nyclu.org  
tding@nyclu.org  
laguirre@nyclu.org  
cdunn@nyclu.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2023, I served by electronic email this opposition to the defendants' motion to dismiss upon the following counsel of record for the defendants in this case:

> Matthew Parisi (MParisi@BPSlaw.com);
> Vincent Crowe (VCrowe@bpslaw.com); and
> David Chen (dchen@bpslaw.com).

Dated: October 5, 2023                                            */s/ Amy Belsher*
New York, NY                                                              Amy Belsher