UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SIDI MOUHAMED DIEDE, ADAMA SY,                   :
ABDALLAHI SALEM, MOUHAMED SAID                   :
MALOUM DIN, and JHONNY NEIRA                     :
*on behalf of themselves and a class of all others*   :   **23-cv-3954 (NSR)(VR)**
*similarly situated*,                            :
                                                 :
                              Plaintiffs,        :
                                                 :
            -against-                            :
                                                 :
COUNTY EXECUTIVE EDWIN J. DAY *as*               :
*Rockland County Executive* and COUNTY           :
EXECUTIVE STEVEN M. NEUHAUS *as*                 :
*Orange County Executive*,                       :
                                                 :
                              Defendants.        :
-----------------------------------------------------------------x

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# MOTION TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT IN REPLY ....................................................................... 1

ADDITIONAL LEGAL STANDARDS AND FACTUAL BACKGROUND................... 2

REPLY ARGUMENTS................................................................................................... 4

    I.    The revised orders do not weigh against a finding of mootness because they do not constitute "ongoing efforts" to "exclude" Plaintiffs. ........................................ 4

    II.    Plaintiff's claims against the long-since expired May 2023 orders are moot........ 6

CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

*Altman v. Bedford Cent. Sch. Dist.*
  245 F.3d 49 (2d Cir. 2001) ............................................................................................. 4
*Am. Freedom Def. Initiative v. Metro. Transpo. Auth.*
  815 F.3d 105 (2d Cir. 2016) ...................................................................................... 7, 8
*Bockus v. Maple Pro, Inc.*
  850 F. App'x 48 (2d Cir. 2021) ..................................................................................... 2
*Calltrol Corp. v. Loxysoft AB*
  No. 18-cv-9026 (NSR), 2021 U.S. Dist. LEXIS 241125 (S.D.N.Y. Dec. 16, 2021) .................. 6
*Chrysafis v. Marks*
  15 F.4th 208 (2d Cir. 2021) ............................................................................................ 7
*Falls v. Pitt*
  No. 16-cv-8863 (KMK), 2021 U.S. Dist. LEXIS 58197 (S.D.N.Y. March 26, 2021) ............... 6
*Fidelity Partners v. First Trust Co.*
  142 F.3d 560 (2d Cir. 1998) ........................................................................................... 2
*Floyd v. A.D.A. Eliza Filipowski*
  No. 21-cv-4096 (NSR), 2022 U.S. Dist. LEXIS 120970 (S.D.N.Y. July 8, 2022) ..................... 9
*Geller v. Hochul*
  No. 21-2514-cv, 2023 U.S. App. LEXIS 1077 (2d Cir. Jan. 18, 2023) ..................................... 7
*In re European Gov't Bonds Antitrust Litig.*
  No. 19-cv-2601 (VM), 2020 U.S. Dist. LEXIS 130724 (S.D.N.Y. July 23, 2020) .................... 6
*Make the Rd. N.Y. v. Pompeo*
  475 F. Supp. 3d 232 (S.D.N.Y. 2020) ........................................................................... 9
*Meco Elec. Co. v. Siemens Indus.*
  No. 21-cv-9166 (GHW)(RWL), 2022 U.S. Dist. LEXIS 160634 (S.D.N.Y. Sept. 6, 2022) ...... 5
*Mhany Mgmt. v. Cnty. of Nassau*
  819 F.3d 581 (2d Cir. 2016) ........................................................................................... 9
*New Line Int'l Releasing v. Marty Toy (USA)*
  No. 91-cv-8638 (JFK), 1995 U.S. Dist. LEXIS 7781 (S.D.N.Y. June 7, 1995) ........................ 2
*New York v. Raimondo*
  No. 19-cv-9380 (MKV), 2021 U.S. Dist. LEXIS 69285 (S.D.N.Y. Apr. 9, 2021) ........... 7, 9, 10
*Princeton Univ. v. Schmid*
  455 U.S. 100 (1982) ..................................................................................................... 10
*Roman Catholic Diocese v. Cuomo*
  141 S. Ct. 63 (2020) ....................................................................................................... 9
*Stafford v. IBM*
  78 F.4th 62 (2d Cir. 2023) ............................................................................................. 6
*Taveras v. New York City*
  No. 20-cv-1200 (KPF), 2023 U.S. Dist. LEXIS 69420 (S.D.N.Y. Apr. 20, 2023) ................... 10
*Torres v. United States Dep't of State*
  No. 18-cv-2020 (KMK), U.S. Dist. LEXIS 53861 (S.D.N.Y. March 27, 2020) ........................ 8

**PRELIMINARY STATEMENT IN REPLY**

Plaintiffs argue that this action is not moot because they are now "pursuing their claims against the defendants' revised orders." (Opp'n 1.) But they are not. As the docket clearly reflects (ECF No. 11), the operative pleading in this action is still the "First Amended Class Action Complaint," filed on May 15, 2023 against Defendants' *original* orders. Plaintiffs have spurned every opportunity to pursue claims against the revised, June 2023 orders. Simply asserting, in a legal brief, that Plaintiffs have "live claims" against those revised orders is meaningless; Plaintiffs have not actually ***pled*** such claims.

In fact, Plaintiffs' opposition utterly ignores the second half of Defendants' opening brief, which argues that as an alternative to dismissal for mootness, Plaintiffs may simply amend their complaint so as to present the Court with a live case or controversy.

Plaintiffs clearly would prefer that the Court focus solely upon the original, May 2023 orders, and it is not difficult to see why: the Court already ruled that the claims challenging those orders are likely to succeed. But as explained in Defendants' pre-motion letter and opening brief, those May 2023 orders are no longer in effect. Any final determination that those orders (or some purely hypothetical, yet-to-be-issued duplicative orders) are unconstitutional would thus be a purely advisory one. The district courts are prohibited from issuing advisory determinations by virtue of their limited jurisdiction.

In other words, if Plaintiffs want to overcome mootness by pursuing "claims against the defendants' revised orders," they must actually plead those claims. If they choose not to, then as a matter of law they are seeking relief only against the orders referenced in, and attached to, their operative complaint; that complaint should be dismissed as moot, as set forth below.[1]

---

[1] Such a dismissal may of course be without prejudice, allowing Plaintiffs one final chance to assert any claims they may have against the revised orders via an amended complaint.

1

## ADDITIONAL LEGAL STANDARDS AND FACTUAL BACKGROUND

Plaintiffs vaguely refer to the background set forth in Defendants' opening brief as "revisionist history." (Opp'n 1.) They do not actually dispute any of the facts set forth therein, however, merely suggesting instead that they are somehow "inaccurate." (*Id.* at 2 n.1.) The underlying events, and the filings in New York State Supreme Court, are all a matter of public record. The Court can and should take judicial notice of them, especially given how much has happened with respect to New York's homeless migrant crisis since May 2023.

Indeed, while it is true that on a motion to dismiss, uncontroverted facts asserted in the complaint are generally accepted (*see* Opp'n 2), a court need not turn a blind eye toward events that have occurred since the complaint was filed. *See Fidelity Partners v. First Trust Co.*, 142 F.3d 560, 563 (2d Cir. 1998). Nor must a court accept "demonstrably false" assertions, such as the assertion (Compl. ¶ 2) that New York City had no "large-scale plans" to transfer migrants to other municipalities. *See New Line Int'l Releasing v. Marty Toy (USA)*, No. 91-cv-8638 (JFK), 1995 U.S. Dist. LEXIS 7781, at *8-9 (S.D.N.Y. June 7, 1995). And a court need not accept "legal conclusions couched as factual allegations," *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021), such as the allegation that Defendants' revised orders were "motivated by the same discriminatory animus" as the initial orders.[2] (Opp'n 1.)

---

[2] Plaintiffs believe there is something inherently discriminatory about the words "migrant" or "asylum seeker." But as Orange County Executive Neuhaus testified, the executive orders lifted those words directly from New York City's own May 2023 press release, which announced the City's homeless migrant transfer program. As recently as October 7, 2023, in an order extending the City's own state of emergency, Mayor Adams stated that "over the past several months, thousands of asylum seekers have been arriving in New York City, from the Southern border, without having any immediate plans for shelter." *See* https://www.nyc.gov/office-of-the-mayor/news/504-003/emergency-executive-order-504.

Regardless, Plaintiffs' own "limited, expedited" discovery has demonstrated that neither the initial orders nor the revised orders were motivated by "discriminatory animus." As Neuhaus testified at his recent deposition, the purpose of the initial orders was to prevent the hotels in question from being turned into *de facto* homeless shelters, and the purpose of the revised orders was to compel New York City's compliance

Plaintiffs assert that Orange County's new orders do not explain how hotel employees should determine whether New York City's homeless relocation program complies with a "complex web of state law and administrative guidance." (Opp'n 3.) But that is what lawyers are for, and the hotels and New York City have lawyers aplenty, as demonstrated by the numerous legal actions they have filed since May 2023 in both federal and state court.

Plaintiffs also assert that Rockland County's new orders give the County Executive "unfettered discretion" to determine whether New York City's migrant transfer program "complies with federal, state, and local laws." (Opp'n 4.) But Rockland County has not exercised "unfettered discretion"—it has sought relief in New York State Supreme Court. It is that Court, not the County Executive, which will ultimately determine whether New York City's program "complies with federal, state, and local laws." (*Id.*)

Plaintiffs dismiss the changes to the executive orders as "largely cosmetic." (Opp'n 4.) But a side-by-side comparison of the revised and initial orders debunks this. Among other things, the revised orders set forth crucial context, such as the fact that Orange County homeless shelters are already at capacity, and the fact that Rockland County lacks sufficient low-income housing for its own current residents. This context cannot be ignored.

Finally, Plaintiffs state that Defendants "do not deny that the intention of these orders remains the same: to prevent the relocation of migrants and asylum seekers to their counties." (Opp'n 4.) But the orders themselves belie this bald claim; Rockland's June order explicitly states that it does ***not*** "have the purpose of barring any person from travelling to or residing in the County." (Chen Decl. Ex. E, at 3). Moreover, Defendants are not required to "deny" anything at this stage, because they moved to dismiss in lieu of answering pursuant to Rule 12 of

---

with existing law, specifically New York's Social Service Law. Rockland County's revised order specifically ***prohibits*** discrimination. (*See* Chen Decl. Ex. E, at 2.)

3

the Federal Rules of Civil Procedure.  Indeed, Defendants have not even had the opportunity to deny allegations about the revised orders, because Plaintiffs have yet to formally plead any.

## REPLY ARGUMENTS

**I.     The revised orders do not weigh against a finding of mootness because they do not constitute "ongoing efforts" to "exclude" Plaintiffs.**

Plaintiffs first argue that their action is not moot because Defendants' "attempts to exclude the plaintiffs from their counties through executive orders has not ceased."  (Opp'n 4.)  But they never articulate just how the revised orders purport to "exclude" them.  (*Id.*)   That is because they do no such thing—any member of the purported class (and more broadly, any "migrant" or "asylum seeker") may, without running afoul of the orders, freely move to, or within, both Rockland and Orange Counties.  The revised orders prevent **New York City** from operating *de facto* homeless shelters outside its borders in violation of state and local law.

It is important to recall at this juncture that to the extent any putative member of the class is unable to take up residence in one of these *de facto* shelters, it is by operation of state court rulings, not county executive orders.  Defendants had every right to seek such relief in state court; doing so is neither actionable nor is it evidence of discrimination.  For their part, Plaintiffs have neither intervened in any of these state court actions nor sought relief herein against them.

Plaintiffs next note, correctly, that the Court addressed standing in its June 6th preliminary injunction.  (*See* Opp'n 5 n.4.)  But as the Second Circuit has held, "[t]he Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies.  This limitation … generally means that if the plaintiff loses standing at any time during the pendency of the proceedings in the district court or in the appellate courts, ***the matter becomes moot***, and the court loses jurisdiction."  *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001) (emphasis added) (citations omitted).  In other words, the question of

4

whether Plaintiffs were actually harmed—and more specifically, harmed **by Defendants** as required for Article III standing—remains a live one.

Plaintiffs assure the Court that it "need not reach the question of whether New York City's relocation program violates the state and local laws cited in the revised orders to rule on the plaintiffs' claims." (Opp'n 6.) But make no mistake—if the Court were to ultimately declare the orders unconstitutional, it would find itself enmeshed in questions of New York State law and the legality of New York City's homeless migrant relocation program. And several New York State courts have already indicated that this program may be illegal. Indeed, the Hon. Thomas P. Zugibe, J.S.C. recently enjoined New York City from transporting anyone residing in City shelters to hotels or other facilities within Rockland County, based on state law.[3]

Plaintiffs argue that County Executive Neuhaus' revised order requires hotels to inquire as to the "circumstances of a person's background, finances, and arrival in the county." (*See* Opp'n 6 n.6.) Not remotely. The revised order prohibits Orange County hotels from serving as *de facto* shelters for New York City's homeless population, regardless of any individual's particular circumstances. Plaintiffs' wild suggestion that this will result in "the harassment of people perceived to be non-white, foreign-born, or lacking in citizenship" (*id.*) is baseless and cannot serve to defeat this motion. *See Meco Elec. Co. v. Siemens Indus.*, No. 21-cv-9166 (GHW)(RWL), 2022 U.S. Dist. LEXIS 160634, at *20 (S.D.N.Y. Sept. 6, 2022) (collecting cases and noting that "[c]ourts have consistently held that mere speculation is insufficient to withstand a motion to dismiss"). In fact, Judge Zugibe just denied the hotels' TRO, finding no "harassment."

---

[3] A copy of this decision is attached hereto. Notably, it rejected the hotels' argument that "Rockland County has acted with 'racist motivation.'" *County of Rockland et al. v. City of New York et al.*, No. 032065/2023 (TPZ), NYSCEF Doc. No. 228, at 15 (Rock. Cty. Sup. Ct. Oct. 17, 2023). The decision cites an earlier injunction issued by the Hon. Sandra B. Sciortino, also attached hereto, which similarly rejected the argument that Orange County's actions were discriminatory. *See County of Orange et al. v. New York City et al.*, No. EF003109-2023 (SBS), NYSCEF Doc. No. 74, at 17-18 (Orng. Cty. Sup. Ct. June 21, 2023).

5

Plaintiffs conclude their primary opposition argument by asserting that they are "pursuing, with the sanction of this Court, the same live claims raised in the First Amended Complaint against these continued efforts." (Opp'n 7 (citing (ECF Nos. 64, 87).) But the "sanction" to which they cite was referring to a possible second motion for preliminary relief. The Court has never purported to relieve Plaintiffs of their jurisdictional requirement to "maintain a 'live' case or controversy." *Stafford v. IBM*, 78 F.4th 62, 66 (2d Cir. 2023).  Nor has the Court ruled that Plaintiffs may proceed on claims they "have not actually pleaded." *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-2601 (VM), 2020 U.S. Dist. LEXIS 130724, at *25 (S.D.N.Y. July 23, 2020) (dismissing complaint as to certain defendants on 12(b)(1) grounds). Indeed, as this Court has squarely held, a plaintiff may not assert new claims in opposition to a motion to dismiss. *See Calltrol Corp. v. Loxysoft AB*, No. 18-cv-9026 (NSR), 2021 U.S. Dist. LEXIS 241125, at *4 n.2 (S.D.N.Y. Dec. 16, 2021); *see also Falls v. Pitt*, No. 16-cv-8863 (KMK), 2021 U.S. Dist. LEXIS 58197, at *185 (S.D.N.Y. March 26, 2021) (plaintiffs may not "constructively amend" complaint in opposition to dismissal motion).

## II.    Plaintiff's claims against the long-since expired May 2023 orders are moot.

Implicitly acknowledging that their complaint is moot, Plaintiffs next argue that they nevertheless "maintain live claims against the defendants' *original* orders under two exceptions to the mootness doctrine." (Opp'n 7 (emphasis in original).) This argument is also unavailing.

Plaintiffs first suggest that Defendants did not "voluntarily" cease their challenged conduct, and instead did so only "due to a court order." (Opp'n 9.) They ignore the fact that the challenged orders automatically expired after thirty days; Rockland's order, in fact, expired the day **before** the Court issued its June 6th injunction. More importantly, while the Court enjoined enforcement of the challenged orders, it did not prohibit Defendants from renewing them.

6

Defendants nevertheless chose *not* to renew them when they expired, and instead issued new orders focused narrowly on state law.  Cf. *Chrysafis v. Marks*, 15 F.4th 208, 214 (2d Cir. 2021) (finding mootness based on "state legislature's enactment of a new law, which legislators, aware of the defect identified by the Supreme Court, explicitly sought to remedy").

*Am. Freedom Def. Initiative v. Metro. Transpo. Auth.*, 815 F.3d 105 (2d Cir. 2016) is squarely on point.  There, as here, the district court preliminarily enjoined enforcement of the challenged action on Constitutional grounds.  *See id.* at 108.  There, as here, the defendant addressed the alleged Constitutional infirmities and then asserted mootness.  *See id.* at 108.  There, as here, the plaintiffs opted not to amend, and instead proceeded against the original action.  *See id.* at 109; *see also Geller v. Hochul*, No. 21-2514-cv, 2023 U.S. App. LEXIS 1077, at *3 (2d Cir. Jan. 18, 2023) (finding mootness in part because plaintiff had "sought only declaratory and prospective relief").

Plaintiffs attempt to distinguish *Am. Freedom Def. Initiative* by arguing that Defendant Neuhaus "has made no representation to this Court that [he] does not intend to enforce [his original] order once the temporary restraining order expires." (Opp'n 9.)  But at his deposition,[4] when Plaintiffs' counsel repeatedly asked what he would do if New York City again sent "busses of migrants" to Orange County, Neuhaus testified that he would simply seek relief in court.

This sworn testimony is entitled to deference—certainly more than was given to the attorney arguments in *Am. Freedom Def. Initiative*.  *See* 815 F.3d at 110; *see also New York v. Raimondo*, No. 19-cv-9380 (MKV), 2021 U.S. Dist. LEXIS 69285, at *6 (S.D.N.Y. Apr. 9, 2021) ("Voluntary cessation of challenged conduct by government actors is treated with more solicitude than similar action by private parties").  Plaintiffs would have the Court believe that

---

[4] Only a rough transcription of this deposition was available to Defendants at the time of filing.  At the Court's request, Defendants can provide a final transcript once it is completed.

7

Neuhaus secretly intends to take some extrajudicial action to keep migrants out of Orange County, but this is pure fantasy. *See Torres v. United States Dep't of State*, No. 18-cv-2020 (KMK), U.S. Dist. LEXIS 53861, at *13 (S.D.N.Y. March 27, 2020 ("any claims that Respondent would take the same actions against Petitioner with respect to future [] requests is mere speculation").

Plaintiffs also attempt to distinguish *Am. Freedom Def. Initiative* by noting that it involved a final judgement, as opposed to the preliminary injunction issued here. (Opp'n 9.) This is a distinction without difference—the judgment in *Am. Freedom Def. Initiative* was only a partial one, *see* 815 F.3d at 109, and although the Court's injunction here was preliminary, Defendants could have appealed it as of right. *See* 28 U.S.C. § 1292(a). Their declining to do so strongly suggests there is no reasonable expectation that Defendants will re-issue their original orders. *See Am. Freedom Def. Initiative*, 815 F.3d at 110. Indeed, they have no motive to do so, given that Defendants have since obtained preliminary injunctions of their own in the New York State Supreme Courts of both Orange and Rockland Counties.

Plaintiffs argue (Opp'n 10) that notwithstanding this Court's preliminary injunction, the risk to them has not been "irrevocably eradicated." But the relevant question is whether the effects of the "**challenged** conduct" have been eliminated, *Am. Freedom Def. Initiative*, 815 F.3d at 110 (emphasis added), not whether the chance of a **similar result** has been eliminated. In *Am. Freedom Def. Initiative*, after the defendant changed its policy, it again refused to accept the plaintiff's advertisement, albeit for different reasons. The Second Circuit still found mootness, noting that "any restriction on [plaintiff]'s speech at this time is a consequence of the [defendant]'s new advertising policy, not a relic of its old one." *Id.* The same is true here.

8

The mere fact that Defendants "retain[] the ability" to re-issue their original orders (Opp'n 10) is not dispositive of the mootness question; every government entity has the ability to repeat a challenged action. Another court in this district recently rejected an identical argument from another plaintiff opposing mootness. *See Raimondo*, 2021 U.S. Dist. LEXIS 69285, at *6-7 ("That Defendants retain the power to [reenact a discontinued rule] is not enough to keep this controversy alive.").

Plaintiffs next argue that Defendants' "pursuit of state court litigation" suggests that they "remain committed to excluding the plaintiffs from their counties." (Opp'n 11.) But again, Defendants are perfectly entitled to seek judicial relief from New York City's ill-considered homeless migrant relocation program, just as Plaintiffs are perfectly entitled to oppose those judicial efforts.

Plaintiffs' own cited cases are inapposite. The Circuit's "skepticism" in *Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581 (2d Cir. 2016) arose from the fact that the defendant failed to keep the district court abreast of its plans. *See id.* at 604. Here, in contrast, Defendants affirmatively brought their revised executive orders to the Court's attention. In *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232 (S.D.N.Y. 2020), unlike the case at bar, it was undisputed that "the challenged conduct ha[d] not ceased." *Id.* at 255. And in *Floyd v. A.D.A. Eliza Filipowski*, No. 21-cv-4096 (NSR), 2022 U.S. Dist. LEXIS 120970, at *13 (S.D.N.Y. July 8, 2022), this Court's determination that the potentially moot issues remained capable of repetition was premised upon "the unpredictability of the ongoing pandemic and the ensuing public health response to it."

*Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020) involved an application directly to the U.S. Supreme Court for an injunction against then-Governor Cuomo's executive order mandating building occupancy limits during the Covid-19 pandemic. After the application was

9

made, Cuomo "reclassified the areas in question." *Id.* at 68. The five-justice majority rejected Cuomo's mootness argument, finding it outweighed by their concern for the plaintiffs' ability to attend in-person religious services. *See id.*

In a dissent joined by Justices Sotomayor and Kagan, however, Justice Breyer explicitly noted that:[5] the applicants were no longer subject to the restrictions they had challenged; they had not challenged the lessor restrictions to which they were still subject; and even if the governor reimposed the originally challenged restrictions, the applicants could simply "refile their applications." *Id.* at 77; *see also Raimondo*, 2021 U.S. Dist. LEXIS 69285, at *7 (noting that plaintiff "can cure its mootness problem by simply starting over again—by challenging the regulation currently in force"). This Court should follow that eminently logical reasoning here.

Finally, Plaintiffs' contention that the challenged executive orders are too short in duration to be fully litigated (*see* Opp'n 11-12) would be more compelling if the revised June orders hadn't been repeatedly extended. (*See* Chen Decl. Exs. D-H.) Plaintiffs find it irrelevant "that the defendants *may* extend the orders" (Opp'n 12), apparently refusing to acknowledge that Defendants **have** extended them, multiple times. The only thing keeping the currently-in-effect executive orders from being "fully litigated" is Plaintiffs' reluctance to litigate them.

In sum, while "[t]he mootness doctrine may be frustrating to litigants who are determined to seek forward-looking remedies … that frustration is by design, as federal courts are not in the business of issuing opinions that are hypothetical or advisory." *Taveras v. New York City*, No. 20-cv-1200 (KPF), 2023 U.S. Dist. LEXIS 69420, at *25 (S.D.N.Y. Apr. 20, 2023) (citing *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982)).

---

[5] Chief Justice Roberts separately dissented, although he agreed with the Court's three more liberal justices that the challenge to Cuomo's executive order was moot. *See* 141 S. Ct. at 75.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in their opening papers, Defendants respectfully submit that their motion to dismiss this action as moot should be GRANTED.

In the alternative, Plaintiffs may be directed to amend their complaint so as to present a live case or controversy.

Dated: October 20, 2023                    BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Avenue
White Plains, New York 10601
Tel.: (914) 949-2700
Fax: (914) 683-6956
*Counsel for Defendants*

by:     /s/ *David H. Chen*
David H. Chen, Esq.
dchen@bpslaw.com

Vincent W. Crowe, Esq.
vcrowe@bpslaw.com

Matthew G. Parisi, Esq.
mparisi@bpslaw.com