UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SIDI MOUHAMED DIEDE, ADAMA SY,
ABDALLAHI SALEM, MOUHAMED SAID
MALOUM DIN, and JHONNY NEIRA
*on behalf of themselves and a class of all others similarly situated*,

       Plaintiffs,

   -against-

COUNTY EXECUTIVE EDWIN J. DAY *as Rockland County Executive* and COUNTY EXECUTIVE STEVEN M. NEUHAUS *as Orange County Executive*,

       Defendants.
------------------------------------------------------------x

23-cv-3954 (NSR)(VR)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR COSTS AND ATTORNEY'S FEES

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

LEGAL STANDARDS .................................................................................................................. 6

ARGUMENT .................................................................................................................................. 7

    I.    Plaintiffs did not "prevail" on the June 6th preliminary injunction for purposes of attorney fees because the injunction—at NYCLUF's own request—did not impact either of the state court TROs that were already in place. ........................................................................................................ 7

    II.    Plaintiffs did not "prevail" in pre-answer discovery, which actually militated in favor of Defendants' successful motion to dismiss this action. ............................................................. 9

    III.    To the extent the Court awards NYCLUF any costs or attorney's fees, the amount NYCLUF seeks is unreasonable and should be reduced accordingly. ..................................................... 11

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Chrysafis v. Marks*, No. 21-CV-2516 (GRB)(AYS), 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023)........ 11
*County of Dutchess et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. 2023-51697 ......................... 3
*County of Orange et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. EF003109-2023 ................ 3, 7
*County of Rockland et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. 032065/2023 ................. 3, 7
*Curtin v. Mitnick Law Office*, LLC, No. 13-CV-3142 (NSR) (2013 U.S. Dist. LEXIS 129138) ............... 14
*DiMartile v. Hochul*, 80 F.4th 443 (2d Cir. 2023) ................................................................................ 6, 7, 8
*Estiverne v. Esernio-Jenssen*, 908 F. Supp. 2d 305 (E.D.N.Y. 2012)........................................................... 9
*Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997) ............................................................................................... 7
*HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573 (S.D.N.Y. 2021) .................................... 10
*Knox v. John Varvatos Enterprises Inc.*, 520 F. Supp. 3d 331 (S.D.N.Y. 2021)......................................... 10
*Laprade v. Blackrock Fin. Mgmt.,* 2002 WL 31499244 (S.D.N.Y. Mar. 28, 2002) ...................................... 9
*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994) ............................................................................................. 6
*Ma v. Chertoff*, 547 F.3d 342 (2d Cir. 2008) ........................................................................................... 6, 9
*Orange County et al. v. The Crossroads Hotel and Ramada by Windham* (N.Y. Sup. Ct. Index No. EF003107-2023) .........................................................................................................................................2
*Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749 (S.D.N.Y. 2015).......................................................... 9
*Rivers v. Doar*, 2010 WL 5313735 (E.D.N.Y. Dec. 20, 2010).................................................................... 8

**Rules**

N.Y. EXEC. LAW § 24 .................................................................................................................................. 4

**PRELIMINARY STATEMENT**

Defendants respectfully submit this memorandum of law in opposition to the September 6, 2024 motion by the New York Civil Liberties Union Foundation ("NYCLUF") for over a quarter million dollars in costs and attorney's fees. NYCLUF's motion follows the dismissal of its first amended complaint and the denial of its motion for class certification—after which it effectively admitted defeat by declining to amend a second time.

NYCLUF argues that it is nevertheless the "prevailing party" in light of the June 6, 2023 preliminary injunction ("PI"), which enjoined enforcement of Defendants' May 2023 Executive Orders ("EOs"). But the PI did not provide any "direct benefit" to the plaintiffs as required for attorney fees—New York City still could not relocate them due to two state court TROs, which NYCLUF ***explicitly declined to challenge***. Moreover, both EOs had expired just two days after the June 6th PI and were replaced by EOs that NYCLUF ***never sought to enjoin***. Plaintiffs' "victory" was thus "too fleeting to make them eligible for a fee award," per the Second Circuit.

Nor did Plaintiffs "prevail" with respect to pre-answer discovery, for which NYCLUF also seeks attorney fees. NYCLUF sought this discovery "in anticipation of a request for additional preliminary relief," but then declined to seek such relief. Indeed, the Court cited this very discovery—specifically, the deposition of Orange County Executive Neuhaus—***in dismissing Plaintiffs' action as moot***. If any party "prevailed" in pre-answer discovery, it was Defendants.

To the extent the Court nevertheless finds that Plaintiffs were the "prevailing party," the fees NYCLUF seeks are excessive. Indeed, some of NYCLUF's asserted rates are more than double the rates of Defendants' experienced private counsel in this action, and many of the billed tasks were redundant or inapplicable. Therefore, and as set forth in greater detail below, the Court should highly discount any attorney's fees it might award to NYCLUF.

## BACKGROUND

In the spring of 2023, New York City's shelter system was being strained by the arrival of thousands of homeless migrants and asylum seekers who were being bussed to the City from Texas. On May 5, 2023, frustrated by a perceived lack of support from state and federal authorities, Mayor Adams announced a plan to bus some of these persons out of New York City.[1] The City contracted with a company known as DocGo to shelter them in converted hotels located in other New York counties.[2] Most of these other counties, including both Orange and Rockland Counties (together, "Defendants"), were never consulted about and had not agreed to this plan.[3]

Defendants both had two responses to the City's unilateral actions. Both counties issued Executive Orders, dated May 6th (Rockland) and May 8th (Orange), which were the subject of Plaintiffs' original May 11, 2023 complaint (amended May 15th). And both counties filed Article 78 actions in New York State Supreme Court seeking, *inter alia*, to enjoin the City's program.[4]

---

[1] *See* "Mayor Adams Announces Program to Provide Shelter Option For Asylum Seekers Already in Care in Nearby New York Counties," *available at*: https://www.nyc.gov/office-of-the-mayor/news/322-23/mayor-adams-program-provide-shelter-option-asylum-seekers-already-care-in. NYCLUF asserts that its clients left New York City "voluntarily." (Pls.' Mem. of Law 1.) Of course, according to Texas, "[e]very migrant bused or flown *to* New York City [also] did so voluntarily[.]" *See* "Governor Abbott Statement on NYC Lawsuit Against Bus Companies Transporting Migrants" (emphasis added), *available at*: https://gov.texas.gov/news/post/governor-abbott-statement-on-nyc-lawsuit-against-bus-companies-transporting-migrants.

[2] *See* "DocGo Migrant Contract from NYC Benefitted Family Members," *available at*: https://www.timesunion.com/capitol/article/docgo-migrant-contract-nyc-benefited-family-19445504.php.

[3] At least one upstate county that initially agreed to cooperate with New York City soon withdrew its cooperation following reports of sexual assault at the hotels-turned-shelters. *See* "Asylum Seeker Arrested in Sexual Assault Case; No More Asylum Seekers to Come to Erie County," *available at*: https://www.wivb.com/news/local-news/erie-county/cheektowaga/asylum-seeker-arrested-sexual-assault-case-no-more-asylum-seekers-to-come-to-erie-county/.

[4] Orange County also filed a lawsuit against two participating Newburgh hotels, *Orange County et al. v. The Crossroads Hotel and Ramada by Windham* (N.Y. Sup. Ct. Index No. EF003107-2023), which the defendants removed to federal court. Orange County then moved to remand, which motion this Court granted on April 23, 2024. (*See generally* Case No. 23-cv-4213 (NSR), Dkt. Entry No. 40).

On May 11, 2023, Supreme Court, Rockland County (Hon. Thomas P. Zugibe, J.S.C.) issued a temporary restraining order ("TRO") against New York City's relocation program. (*See generally County of Rockland et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. 032065/2023.) On May 16, 2023, Supreme Court, Orange County (Hon. Sandra B. Sciortino, J.S.C.) did the same. (*See generally County of Orange et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. EF003109-2023.) Thus, by the time NYCLUF argued its PI motion before this Court on June 1st, the City's migrant/asylum seeker relocation program had already been temporarily halted as to the Defendant counties by two different state courts.[5]

Nevertheless, NYCLUF did not intervene on behalf of Plaintiffs in either state court action, nor did NYCLUF seek relief from this Court as against either state court TRO. Indeed, in issuing the June 6th PI, this Court made clear that the:

> grant of preliminary injunction only applies as to the enforcement of the Rockland and Orange County EOs. As Plaintiffs have represented during oral argument and in their moving papers, ***that is the only relief they seek***. As already indicated, the Court's decision herein does not mean to interfere with the temporary restraining orders that are in effect and that were issued in state court proceedings, described above, concerning the interpretation and applicability of state and local laws.

(ECF No. 55, at 51 (emphasis added).) In other words, while the June 6th PI enjoined enforcement of the Defendants' May 2023 EOs, it explicitly did ***not*** enjoin enforcement of the state court TROs, which had already blocked the City from fully implementing its migrant relocation program.[6]

---

[5] Both state courts subsequently issued PIs, from which New York City then appealed; the City also moved to stay both PIs pending appeal, which motions the Appellate Division, Second Department denied on March 4, 2024. Separately, the City moved to consolidate the dozens of state court cases that had been filed against it by other municipalities; the City's motion was denied by Supreme Court, New York County (Hon. Lyle E. Frank, J.S.C.). (*See generally* N.Y. Sup. Ct. Index No. 451368/2023).

[6] Other municipalities also successfully blocked the City's asylum seeker relocation program. In particular, Dutchess County filed an Article 78 action virtually identical to that of Defendants, resulting in a December 13, 2023 permanent injunction against the City and a Poughkeepsie hotel in Supreme Court, Dutchess County (Hon. Maria G. Rosa, J.S.C.). (*See County of Dutchess et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. 2023-51697.) The City appealed, but did not perfect until October 3, 2024.

Defendants' May 2023 EOs were both issued pursuant to Section 24 of New York State's Executive Law, which mandates that such orders "remain in effect for a period not to exceed thirty days[.]" N.Y. EXEC. LAW § 24(1). Accordingly, the challenged Rockland County EO automatically expired under the NYS Executive Law on June 6, 2023 and the challenged Orange County EO was set to expire on June 8, 2023. (*See* ECF No. 1 (Compl.), Exs. 1 and 2.)

Given those expirations, both Defendants issued new EOs, dated June 7th (Orange County) and June 14th (Rockland). Mindful of the Court's June 6th PI, the new EOs narrowly focused on New York's Social Services Law. Specifically, Orange County "[o]rder[ed] that all hotels, motels and/or any facilities allowing short term rentals do not accept individuals transported to Orange County in violation of Social Services Law § 62" (ECF No. 59-1), and Rockland similarly ordered that no other municipality "may establish a shelter or temporary housing in Rockland County without adhering to the requirements of … NYS Social Services Law[.]" (ECF No. 59-2.) The June 6th PI had enjoined enforcement of Rockland County's original May 2023 EO for less than a day, and enjoined enforcement of Orange County's original May 2023 EO for a day at most, before the former automatically expired by operation of state law and the latter was superseded.

Defendants affirmatively notified the Court of their new EOs (*see* ECF No. 59), and continued to do so as each subsequent EO expired and was replaced in turn. (*See generally* ECF No. 98.) Nevertheless, NYCLUF suggested—without evidence—that "the counties are attempting to circumvent this Court's injunction," which "may necessitate a second motion for preliminary relief." (ECF No. 63, at 3.) NYCLUF requested "limited, expedited," pre-answer discovery in furtherance of this prospective motion. (*See id.*) On July 7, 2023, the Court granted this request, while simultaneously permitting Defendants to move for dismissal on mootness grounds in light of the fact that their original May 2023 EOs were no longer in effect. (ECF No. 64.)

4

Plaintiffs filed a motion for class certification on September 27, 2023 (ECF No. 88), and Defendants filed their motion to dismiss on October 20, 2023 (ECF No. 96.) Defendants also produced documents in response to NYCLUF's discovery demands and made both county executives available for deposition. On February 15, 2024, while both motions were still pending, NYCLUF informed the Court that its requested discovery was complete, but that it nevertheless intended to "await resolution of intervening state-court developments before proceeding with a request for further injunctive relief." (ECF No. 121, at 1.)

On July 19, 2024, the Court granted Defendants' motion to dismiss this action on mootness grounds, and simultaneously denied as moot Plaintiffs' motion for class certification. (*See generally* ECF No. 123.) The Court held, in relevant part, that:

> the new EOs no longer target or even mention 'migrants,' 'asylum seekers,' or even homeless persons, but rather prohibit the establishment of short-term housing or shelters that violate New York's Social Services Law and the regulations promulgated thereunder. As a result, any claims the Plaintiffs have against the new EOs are 'qualitatively different' from those contained in the FAC and reflect a sufficiently different controversy for mootness purposes. … The Court thus disagrees with Plaintiffs' assertion that the difference between the original and the new EOs is 'largely cosmetic' – rather, the new EOs represent Defendants' efforts to remedy the defects identified in the Court's previous order, and thus raise distinct Constitutional questions than those raised in the FAC.

(*Id.* at 5 (citations omitted).) The Court noted that Orange County Executive Steven Neuhaus:

> testified at his deposition that he does not intend to enforce the original EOs once the temporary restraining orders Defendants have received from state courts expire. This representation is entitled to some deference, especially considering Plaintiffs have put forth no evidence suggesting that the Defendants intend to reinstate the challenged EOs. Instead, Plaintiffs offer little more than speculative concerns that the 'Defendants remain committed to excluding the Plaintiffs from their counties,' which is plainly insufficient to show that their claims against Defendants are not moot.

(*Id.* at 7 (citations and internal brackets omitted).) The Court gave Plaintiffs the opportunity to amend their complaint again. (*Id.* at 10.) Instead, NYCLUF filed the instant motion.

## **LEGAL STANDARDS**

"Section 1988(b) of title 42 authorizes district courts, in their discretion, to grant a reasonable attorney's fee to the prevailing party in an action to enforce a provision of various statutes, including 42 U.S.C. § 1983." *DiMartile v. Hochul*, 80 F.4th 443, 450 (2d Cir. 2023) (citations and internal quotation marks omitted). "The fee applicant bears the burden of showing that it is a prevailing party," *id.* at 451, and "a court should not resolve [any] uncertainty in favor of a finding that plaintiff prevailed." *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994).

> A prevailing party is one who obtains actual relief on the merits that alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Precedent teaches that actual relief on the merits can be something less than a favorable final judgment following a full trial on the merits. But no material alteration of the legal relationship between the parties occurs … until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.

*DiMartile*, 80 F.4th at 451 (citations and internal quotation marks omitted); *see also Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (plaintiff was not "prevailing party" under federal Equal Access to Justice Act where district court had dismissed his complaint as moot).

The fee applicant in *DiMartile,* like NYCLUF in the instant case, only "prevailed" insofar as it obtained a PI that was "soon thereafter mooted." *Id.* The Second Circuit thus held that the PI "effected only the type of ephemeral, transient victory that does not confer prevailing party status." *Id.* at 453; *see also id.* at 454 ("Plaintiffs' … success in obtaining a preliminary injunction was provisional and tentative in nature, not material and enduring"). Specifically, the Circuit noted that the PI was only in effect for two weeks. *See id.* at 458 ("the short-lived preliminary injunction in this case does not support a determination that Plaintiffs are prevailing parties eligible for attorney's fees"). Key to this holding was the fact that the PI "did not modify Defendants' behavior towards [the plaintiffs] in a way that provided them with any direct benefit." *Id.* at 455.

6

# ARGUMENT

I.  **Plaintiffs did not "prevail" on the June 6th preliminary injunction for purposes of attorney fees because the injunction—at NYCLUF's own request—did not impact either of the state court TROs that were already in place.**

NYCLUF first argues that it "prevailed" for purposes of attorney fees because it "secured a preliminary injunction on the merits that granted [Plaintiffs] the relief they sought." (Pls.' Mem. of Law 6.)  This is factually incorrect, and also misstates the relevant legal standard.  Per the Second Circuit's recent *DiMartile* decision, a court adjudicating a motion for attorney's fees based on a preliminary injunction must examine whether the PI provided "any direct benefit" to the moving party.  80 F.4th at 455.  The June 6th PI at issue here clearly did not.[7]

This PI was obtained on behalf of a putative class of migrants in New York City who "wish[ed] to relocate to Rockland or Orange Counties" and "volunteered to participate in the City's program." (Compl. ¶ 3.)  But when NYCLUF filed its PI motion on May 15, 2023 (ECF No. 12), the City's program had already been blocked by one state court TRO (*County of Rockland et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. 032065/2023, NYSCEF Dkt. No. 24), and by the time the PI motion was argued on June 1, 2023, a second state court TRO was also blocking the City's program. (*County of Orange et al. v. City of New York et al.*, N.Y. Sup. Ct. Index No. EF003109-2023, NYSCEF Dkt. No. 23.)

Despite this, NYCLUF "represented during oral argument and in their moving papers" that the only relief sought via the PI motion was to enjoin enforcement of Defendants' May 2023 EOs. (ECF No. 55, at 51.)  NYCLUF expressly did ***not*** seek relief as against the state court TROs—which were accordingly unaffected by the June 6th PI and continued to block the City's migrant/asylum seeker relocation program in Rockland and Orange Counties. (*See id.*)

---

[7] *Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997), cited by NYCLUF, predated *DiMartile* by over twenty-five years.  The law on attorney's fees for PIs in this Circuit has evolved considerably since *Haley*.

7

The June 6th PI accordingly did not provide Plaintiffs with "any direct benefit." *DiMartile*, 80 F.4th at 455. Specifically, it did not enable them to actually "relocate to Rockland or Orange Counties" as they allegedly wished to do. (Compl. ¶ 3.) It was of course NYCLUF—Plaintiffs' own counsel—who ensured this outcome by declining to seek relief as against the state court TROs. (*See* ECF No. 55, at 51.)

Even if Plaintiffs could be considered "successful" with respect to the June 6th PI, this success was clearly "provisional and tentative in nature, not material and enduring." *DiMartile*, 80 F.4th at 454. As noted, the PI enjoined enforcement of Defendants' original, May 2023 EOs—which were due to automatically expire, by operation of New York law, on June 6th (Rockland County) and June 8th (Orange County). In other words, the practical effect of the June 6th PI lasted less than forty-eight hours, making Plaintiffs' so-called "victory" even more "fleeting" than that of the *DiMartile* plaintiffs, whose PI was in effect for two weeks. *See id.* at 445. Although NYCLUF threatened to file a similar PI motion as against Defendants' subsequent EOs (*see* ECF No. 63, at 3), it ultimately **declined to do so**. NYCLUF similarly declined to amend its complaint following the Court's July 19, 2024 dismissal (ECF No. 123), effectively abandoning this action.

In sum, under binding Second Circuit case law, Plaintiffs were not the "prevailing party" for attorney fee purposes with respect to the June 6, 2023 preliminary injunction. It bears repeating that NYCLUF could have amended its complaint and/or sought another PI as against Defendants' subsequent EOs, **but chose not to**. Thus, NYCLUF itself is responsible for the extreme "brevity" of its initial "success," similar to the strategic choices made by the *DiMartile* plaintiffs. *See* 80 F.4th at 458; *see also Rivers v. Doar*, No. 06-CV-5863 (FB)(MDG), 2010 WL 5313735, at *2 (E.D.N.Y. Dec. 20, 2010) (rejecting argument that plaintiffs were "entitled to attorney's fees for work done before the preliminary injunction" where they subsequently lost the underlying action).

8

**II.    Plaintiffs did not "prevail" in pre-answer discovery, which actually militated in favor of Defendants' successful motion to dismiss this action.**

NYCLUF cites no authority—and Defendants are aware of none—standing for the proposition that a plaintiff is entitled to attorney fees for pre-answer discovery in a case that was dismissed over the plaintiff's opposition. Indeed, the case law cuts the other way. *See, e.g.*, *Ma*, 547 F.3d at 344 (plaintiff was not "prevailing party" where his complaint was dismissed as moot); *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 773 (S.D.N.Y. 2015) ("Plaintiff's substantive claims here have been dismissed, and therefore there is no basis to award attorney's fees"); *Estiverne v. Esernio-Jenssen*, 908 F. Supp. 2d 305, 311 (E.D.N.Y. 2012) (no basis for fees where "Plaintiffs' sole remaining claim for declaratory relief was moot"). It does not matter that the instant dismissal was without prejudice to amend, because NYCLUF opted *not* to amend. *See Laprade v. Blackrock Fin. Mgmt., Inc.*, No. 99-CV-9288 (WHP), 2002 WL 31499244, at *4 (S.D.N.Y. Mar. 28, 2002) (denying attorney fee application after plaintiff voluntarily dismissed).

NYCLUF argues that via pre-answer discovery, it "collected necessary information related to the promulgation and enforcement of the orders." (Pls.' Mem. of Law 1.) But the "necessity" of any such information is dubious. Defendants' actions—speeches by elected officials, filing of state court lawsuits, revised EOs, etc.—were always a matter of public record, and in fact Defendants affirmatively informed the Court about their revised EOs *before* NYCLUF requested any discovery about them. (*Compare* ECF No. 59 *with* ECF No. 64.)

It should also be recalled that NYCLUF requested pre-answer discovery based on the vague suggestion that "the counties are attempting to circumvent this Court's injunction," which, according to NYCLUF, "may necessitate a second motion for preliminary relief." (ECF No. 63, at 3.) That "second motion" never materialized, because NYCLUF's own discovery confirmed that Defendants were *not* "attempting to circumvent" the June 6th PI.

9

In an effort to retroactively validate its fruitless fishing expedition (and thus claim more attorney's fees), NYCLUF argues that the "[e]vidence the plaintiffs obtained in expedited discovery validated their concerns that the revised executive orders are still animated by the defendants' intent to exclude migrants and asylum seekers." (Pls.' Mem. of Law 5.) But the Court already rejected this argument, describing NYCLUF's so-called "evidence" as "little more than speculative concern[.]" (ECF No. 123, at 7.) In fact, the Court cited NYCLUF's own "limited, expedited discovery"—specifically, the deposition of the Orange County Executive—in dismissing this action on mootness grounds, noting his testimony "that he does not intend to enforce the original EOs once the temporary restraining orders … Defendants have received from state courts expire." (*Id.*) NYCLUF simply cannot spin this into a "victory."

NYCLUF cites *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573 (S.D.N.Y. 2021) for the proposition that it is entitled to "fees for work done after the plaintiff obtained a preliminary injunction against a local law." (Pls.' Mem. of Law 14.) But that case is easily distinguished. In *HomeAway*, the PI in question "was never reversed, dissolved, or otherwise undone." *Id.* at 585. Here, in contrast, the June 6th PI was effectively mooted when the EOs it enjoined expired and NYCLUF declined to seek similar relief against the new EOs. In *HomeAway*, the defendant municipality did not contest that the plaintiff's achievement was "consequential." *Id.* Here, any "achievement" was minimal given that NYCLUF's lawsuit did not enable a single asylum seeker to take advantage of New York City's relocation plan. Finally, the *HomeAway* parties ultimately settled on terms favorable to the plaintiffs, whereas the instant case ended with ***Defendants'*** successful motion to dismiss.

*Knox v. John Varvatos Enterprises Inc.*, 520 F. Supp. 3d 331 (S.D.N.Y. 2021), also cited by NYCLUF, is similarly distinguishable. Those plaintiffs, who prevailed at trial and were

10

awarded "significant" punitive damages, "achieved exactly what they set out to achieve." *Id.* at 339. Similarly, the plaintiffs in *Chrysafis v. Marks*, No. 21-CV-2516 (GRB)(AYS), 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023) clearly achieved their ultimate goal when no less an authority than the United States Supreme Court struck down the state statute at issue. Here, in contrast, NYCLUF accomplished nothing of lasting benefit to its clients. New York City was never able to implement its migrant/asylum seeker relocation plan in Rockland County, due to the state court TRO and subsequent PI. And while the City was briefly able to send migrants to two hotels in Orange County before being blocked by a second state court TRO,[8] that occurred before this action was even filed and had nothing to do with NYCLUF's advocacy.

The Court need look no further. NYCLUF was even less successful in its pre-answer discovery than it was with respect to the June 6th PI. The instant motion for attorney's fees and costs should be denied in its entirety.

**III.    To the extent the Court awards NYCLUF any costs or attorney's fees, the amount NYCLUF seeks is unreasonable and should be reduced accordingly.**

It is black-letter law that any attorney's fees awarded pursuant to Section 1988(b) must be "reasonable." The fees sought by NYCLUF—$259,215.00, in a case that provided no lasting benefit to any of their clients—are patently unreasonable. Thus, to the extent the Court awards NYCLUF any attorney's fees (and none should be awarded, per Parts I and II, *supra*), those fees should be reduced as follows.

---

[8] Notably, attorneys for New York City have represented to Supreme Court, Orange County that the City plans on removing everyone it sent to those hotels by the end of 2024, which was confirmed in a recent report from the City comptroller. *See* "Mismanagement of DocGo Contract by Adams Admin Wasted Millions of Dollars on Unused Hotels, Unauthorized Subcontractors, & Moldy Rooms for Asylum Seekers, New Audit from Comptroller Lander Finds," *available at*: https://comptroller.nyc.gov/newsroom/mismanagement-of-docgo-contract-by-adams-admin-wasted-millions-of-dollars-on-unused-hotels-unauthorized-subcontractors-moldy-rooms-for-asylum-seekers-new-audit-from-comptroller-lander-finds/.

11

*First*, Christopher Dunn's fees should be stricken in their entirety. Mr. Dunn billed 61.5 hours on this matter "in both a direct and supervisory capacity, including reviewing and editing the principal documents in this case." (Ding Decl. ¶ 21.) Defendants do not question Mr. Dunn's experience or expertise. They ***do*** question whether the involvement of NYCLUF's Legal Director was truly needed, given that Senior Staff Attorney Amy Belsher, who has practiced law for a decade, served as lead counsel in this matter (*id.* at ¶ 7); Senior Staff Attorney Terry Ding was perfectly able to serve as lead counsel in her absence (*id.* at ¶ 10); and Senior Staff Attorney Guadalupe Aguirre "has served as lead counsel in several notable cases." (*Id.* at ¶ 14.)

Stated differently, the combined experience of NYCLUF's Senior Staff Attorneys strongly suggests that they did not need Mr. Dunn's involvement, in either a direct or supervisory capacity. Indeed, it is worth noting that NYCLUF seeks fees for no fewer than five different attorneys and a senior paralegal. (Ding Decl. ¶ 23.) In contrast, it took just three defense attorneys to (successfully) litigate this action on behalf of two different municipal clients.

*Second*, the attorney rates that NYCLUF claims (*see generally* Pls.' Mem. of Law 9) are excessive. NYCLUF claims $750/hour for Mr. Dunn's work, $450/hour for Ms. Belsher, $400/hour for Ms. Aguire, $375/hour for Mr. Ding, and $300/hour for the work of Staff Attorney Ifeyinwa Chikenzie, who has an impressive resume but just two years of legal experience. (Ding Decl. ¶ 16.) In comparison, $300/hour was approximately what the undersigned defense attorneys—who have practiced law for fifteen, thirty, and thirty-eight years, respectively—charged Rockland and Orange Counties in this case. That is the rate (if any) that should be applied to all of NYCLUF's attorneys. Logically, the best indicator of "what a reasonable, paying client would be willing to pay" in a given case (*see* Pls.' Mem. of Law 7) is what two reasonable, paying clients actually ***did*** pay in that very case.

12

NYCLUF argues that its excessive rates are justified, *inter alia*, by the fact that it brought claims "on behalf of a proposed class." (Pls.' Mem. of Law 7.) But that proposed class was never certified; Plaintiffs' motion for class certification was denied as moot (ECF No. 123, at 9) and NYCLUF declined to amend its complaint and try again.

NYCLUF also argues that its rates are "consistent with rates that have been awarded in other complex civil-rights litigation in this District." (Pls.' Mem. of Law 10.) But each of the cases that NYCLUF cites were more complex than this one; were litigated in Manhattan, not White Plains; and, most importantly, involved plaintiffs who ***clearly prevailed***. "Results obtained," after all, is one of the factors to be considered in any fee award (*see id.* at 8), and NYCLUF obtained no meaningful, lasting results for its clients here.

NYCLUF also tries to justify its rates by alleging "Defendants' refusal to comply with this Court's orders related to limited expedited discovery." (Pls.' Mem. of Law 11-12.) But NYCLUF notably fails to identify any such "refusal." The record is clear that Defendants complied with all directives from the Court and the assigned Magistrate Judge. That Defendants vigorously litigated every phase of this action (as they had every right to do) may have resulted in more ***hours*** for NYCLUF, but NYCLUF cites no authority that this justifies a higher ***rate***.

*Third*, the number of hours that NYCLUF claims are excessive, particularly with respect to all the hours it spent on pre-answer discovery.[9] NYCLUF claims that this discovery was "required" (Pls.' Mem. of Law 12-13), but the discovery was premised entirely upon NYCLUF's supposed need for a "second motion for preliminary relief" (ECF No. 63, at 3)—which, again,

---

[9] NYCLUF suggests that it made a "motion" to engage in this "limited expedited discovery" (Pls.' Mem. of Law 12), but in fact NYCLUF merely requested such discovery in a letter responding to Defendants' own letter request for leave to file a motion to dismiss. (*See* ECF Nos. 59, 63.) The motions for a protective order, for a discovery stay, and to seal certain records (ECF Nos. 71, 82, 106) were similarly briefed via letter; these were not (or should not have been) time-consuming endeavors. And while NYCLUF may have "prevailed" with respect to some of these minor skirmishes, it lost the overall battle.

13

never materialized. Critically, it was NYCLUF who sought this "limited, expedited" (and completely one-sided) discovery—only to have it backfire by furthering Defendants' own dismissal motion. (*See* Part II, *supra*.)

Any hours spent on NYCLUF's motion for class certification (*see* Pls.' Mem. of Law 13-14) should also be stricken—not only because it was unsuccessful, but because it was completely unnecessary. NYCLUF filed that motion over a month after being served with Defendants' motion to dismiss (*compare* ECF No. 64 *with* ECF No. 88), and thus knew it would be mooted if, as indeed occurred, the dismissal motion was successful. NYCLUF also filed its class certification motion before the record could be developed with any reciprocal discovery. Had it not been mooted by dismissal of the action, there is an excellent chance that NYCLUF's class certification motion would have been denied as premature. *See Curtin v. Mitnick Law Office*, LLC, No. 13-CV-3142 (NSR), at *4 (2013 U.S. Dist. LEXIS 129138) (noting that the "requisite rigorous analysis" for class certification requires "sufficient discovery").

Regarding certain of NYCLUF's other time entries, it was inefficient for NYCLUF to draft an amended complaint just three days after filing the original. Moreover, Defendants should not have to pay for NYCLUF's coordination with New York City, the Attorney General, the governor's office, "state officials," or "counsel in related litigation." Similarly, Defendants should not have to pay for internal NYCLUF meetings about "related advocacy."

*Fourth and finally*, NYCLUF's "reasonable litigation costs" (Pls.' Mem. of Law 16) are anything but. NYCLUF seeks over $5,500 for expenses incurred in litigation that was, by any rational standard, unsuccessful.[10] The bulk of these litigation expenses were incurred taking

---

[10] If any uncertainty on this point still remains, it should be recalled that the Second Circuit squarely held that "a court should not resolve [any] uncertainty in favor of a finding that plaintiff prevailed." *LaRouche*, 20 F.3d at 75.

14

depositions that provided no lasting benefit to NYCLUF's clients, and indeed helped ensure dismissal of this action on mootness grounds. In fact, given that these depositions militated in favor of their successful motion to dismiss, it is **Defendants** who should be considered the "prevailing party," and who should, accordingly, be awarded *their* "reasonable litigation costs" costs pursuant to 28 U.S.C. § 1920 and FED. R. CIV. P. 54(d)(1).

Should the Court agree, Defendants will file a bill of costs with supporting affirmation.

## CONCLUSION

For the foregoing reasons, this motion for attorney's fees and costs should be denied in its entirety, and Defendants should be awarded reasonable litigation costs in light of their successful dismissal motion.

In the alternative, any costs and/or fees awarded to NYCLUF should at least be reduced as set forth in Part III, *supra*.

Dated:  October 6, 2024
       White Plains, New York

Respectfully submitted,

BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Avenue
White Plains, NY 10601
(914) 949-2700
*Counsel for Defendants*

by:  /s/ *David H. Chen*
David H. Chen, Esq.
dchen@bpslaw.com

/s/ *Matthew G. Parisi*
Matthew G. Parisi, Esq.
mparisi@bpslaw.com

/s/ *Vincent W. Crowe*
Vincent W. Crowe, Esq.
vcrowe@bpslaw.com